[L. A. No. 24247. In Bank. Mar. 26, 1958.]

PHILIP F. JOHNSTON et al., Plaintiffs and Appellants, v. CITY OF CLAREMONT et al., Defendants and Appellants.

Harry R. Roberts for Plaintiffs and Appellants.

William G. Bergman, Jr., City Attorney, Burke, Williams & Sorensen, Harry C. Williams and Royal M. Sorensen for Defendants and Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), Edward H. Gaylord, Deputy County Counsel, Roger Arnebergh, City Attorney (Los Angeles), and Bourke Jones, Assistant City Attorney, as Amici Curiae on behalf of Defendants and Appellants.

McCOMB, J.—Plaintiffs and defendants appeal from a judgment in a declaratory relief action which held that an ordinance of the city of Claremont rezoning plaintiffs' property as commercial property was valid.

Plaintiffs' property is located on the southwest corner of Foothill Boulevard and Mountain Avenue in Claremont, extending 959 feet in a westerly direction along the south side of Foothill and 569 feet in a southerly direction along the west side of Mountain. Most of it is planted in citrus trees, but on the northeast corner there are a reservoir, water well, and pumping plant, which have been used for many years for commercial purposes.

The northern and western borders of plaintiffs' property constitute the boundaries between Claremont and land which is unincorporated territory of Los Angeles County.

Foothill Boulevard is a widely travelled highway. The unincorporated area on both sides of the highway for a distance of several miles has been zoned C-1 by the county, a zoning which permits commercial establishments such as retail stores, gasoline stations, and restaurants. A great deal of such land is being devoted to commercial uses. The property on the

south side of Foothill immediately west of plaintiffs' property is being used for a trailer sales business.

Next to plaintiffs' property on the south, there is a substantial area which has been zoned R-1 (single family residence) by the city of Claremont. The eastern side of Mountain is zoned residential for several blocks north and south of Foothill. East of Mountain on Foothill there is no commercial zoning for over a block and no commercial use for about two blocks.

According to the latest estimate available at the time of trial, Claremont had a population of about 9,000. A downtown area of approximately six square blocks is zoned for C-2 (commercial) uses. In addition, a four-block strip on Foothill, principally on the southern side, has been zoned commercial since 1953. There is evidence that only a few lots are vacant in either of these commercial zones, but single family residences are located on more than two square blocks of the downtown area.

Although one real estate appraiser who had investigated the area testified that in his opinion a profit of $38,600 could be realized from subdividing plaintiffs' property for residential purposes under a plan providing for lots which would back onto Foothill, another one testified that in his opinion such a subdivision would result in a loss of $7,800.

A zoning consultant for the city of Claremont and other cities was of the opinion that the city was essentially residential in character and that there should be no more commercial use permitted on the south side of Foothill. There was also testimony to the effect that the city has zoned 50 per cent more land for commercial purposes than the size of the population would indicate is currently needed, and, in the opinion of a zoning expert, an excess commercial zoning of 25 per cent to 30 per cent is a reasonable amount for future expansion. Other testimony, however, was to the effect that there should be twice as much commercial zoning as is necessary at present.

### CHRONOLOGY

i. In 1951 defendant city of Claremont, a sixth class city, adopted a general zoning plan, ordinance Number 441, under the general law. Plaintiffs' property was zoned for agricultural and residential use.

By the terms of the general zoning ordinance as originally adopted, a public hearing was required to be held by the

planning commission on any request for redistricting, but none was expressly prescribed by the ordinance to be held thereafter by the city council.

ii. On May 3, 1954, plaintiffs filed a request with the city council for a change in the zoning of their property from a residential zone to a commercial zone. A public hearing was held by the planning commission, and thereafter the commission referred plaintiffs' request, without recommendation, to the city council.

iii. On June 1, 1954, without further public notice, the city council adopted ordinance No. 503, purporting by its terms to rezone a portion of plaintiffs' property from a residential to a commercial zone. A week later and without notice to plaintiffs, the city council purported to adopt an emergency measure, ordinance No. 504, reciting that the general zoning ordinance did not conform to the Government Code of the State of California and providing that ordinance No. 503 be repealed. Ordinance No. 503 was never published as required by law.

iv. On July 29, 1954, the city council, by ordinance Number 507, amended the general zoning ordinance Number 441 to require a public hearing by both the planning commission and the city council on applications for rezoning.

v. On September 21, 1954, after the effective date of ordinance No. 507, plaintiffs filed a second request for the rezoning of their boulevard frontage to a depth of 300 feet. This application was referred to the planning commission, which held a public hearing on October 19, 1954, but the commission failed to act upon the application within the 40-day period prescribed by ordinance No. 441, as amended by ordinance No. 507, resulting in an approval by operation of law of plaintiffs' application.

vi. On December 6, 1954, the city council held a public hearing upon plaintiffs' application.

vii. On December 14, 1954, defendant city adopted ordinance No. 513, the effect of which was to rezone plaintiffs' boulevard frontage property from an R-1 zone (single family residence) to a C-2 zone (commercial).

viii. Concurrently with the adoption of ordinance No. 513 rezoning plaintiffs' boulevard frontage, plaintiffs delivered to the city a grant deed conveying a 20-foot easement over the most easterly portion of their boulevard frontage for the widening of Mountain Avenue, which deed provided for the automatic defeasance of the grant should ordinance No. 513

be repealed or suspended or otherwise not take effect according to its terms. The city council accepted this grant deed according to the terms thereof.

ix. About January 3, 1955, there were filed with the city clerk referendum petitions signed by 829 registered voters of the city, entitled "Referendum Petition Against Ordinance No. 513 Redistricting Certain Property in the City of Claremont Located at the Southwest Corner of Mountain Avenue and Foothill Boulevard From an R-1 Zone (single family residence) to a C-2 Zone (heavy commercial)."

x. Pursuant to said referendum petition, a special election was held May 3, 1955, to submit to the electors the question of whether ordinance No. 513 should be approved.

xi. On May 10, 1955, after a canvass of the returns it was determined that a majority[1] of the voters had voted against the adoption of ordinance No. 513.

xii. On August 5, 1955, plaintiffs instituted the present declaratory relief action seeking to have it held that ordinance No. 513 was valid.

xiii. After trial, the court found:

(a) That ordinance No. 513 complied in all respects with the requirements of the general zoning law of defendant city and with state law; that it was not subject to referendum under the laws of the State of California; and that as a necessary corollary plaintiffs' deed to the city was a valid and subsisting grant of an easement;

(b) That the highway conditions in front of plaintiffs' property rendered its boulevard frontage more reasonably usable and suitable for commercial purposes than for residential or agricultural purposes; that substantially all the property in the county contiguous to and for some distance east and west along Foothill Boulevard was and had been zoned for business; and that next to plaintiffs' property there were a reservoir, water well, and pumping plant which for many years had been used for commercial purposes;

(c) That ordinance No. 503 was invalid because it was not adopted in conformity with the requirements of state law then in effect; and

---

[1] Of the ballots cast in person, the election was found to be a tie, with 1153 votes for the ordinance and the same number against, but when the 44 absentee ballots were counted, ordinance No. 513 was defeated by a margin of 24 votes.

(d) That the general zoning law, ordinance No. 441, as amended by ordinance No. 513, was not discriminatory as to plaintiffs.

## DEFENDANTS' APPEAL

■ Question : *Is a rezoning ordinance that amends a general zoning ordinance of a city of the sixth class (general law city) subject to referendum?*

*Yes.* The following principles are here applicable :

1. Our Constitution reserves the referendum power to the electorate, including the voters of cities without charters, with certain exceptions not applicable to the present case. (Cal. Const., art. IV, § 1.[2])

■ 2. The power of referendum may be invoked only with respect to matters which are strictly legislative in character. (*Simpson* v. *Hite,* 36 Cal.2d 125, 129 [1] [222 P.2d 225] ; *Dwyer* v. *City Council,* 200 Cal. 505, 511 [3] [253 P. 932] ; *Chase* v. *Kalber,* 28 Cal.App. 561, 568 et seq. [153 P. 397].)

■ 3. A board of supervisors in granting a permit under a zoning ordinance acts in an administrative capacity. (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [6] [187 P.2d 686] ; *Essick* v. *City of Los Angeles,* 34 Cal.2d 614, 623 [3] [213 P.2d 492].)

■ 4. A zoning ordinance constitutes the exercise of a governmental and legislative function and is subject to change by the legislative power. (Gov. Code, § 65804; 8 McQuillin,

---

[2]Section 1 of article IV of the Constitution provides, in part: "The second power reserved to the people shall be known as the referendum. No act passed by the Legislature shall go into effect until 90 days after the final adjournment of the session of the Legislature which passed such act, except acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the State, and urgency measures necessary for the immediate preservation of the public peace, health or safety, passed by a two-thirds vote of all the members elected to each house.

". . . provided, however, that no measure creating or abolishing any office or changing the salary, term or duties of any officer, or granting any franchise or special privilege, or creating any vested right or interest, shall be construed to be an urgency measure. . . .

"The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law. . . . Nothing contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of Section 8 of Article XI of this Constitution. . . . This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved."

Municipal Corporations (3d ed. rev. 1957), Zoning, § 25.65, p. 145[3]; *cf. Dwyer* v. *City Council, supra,* at p. 515; *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 341 [5] [175 P.2d 542]; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [2] [202 P.2d 38, 7 A.L.R.2d 990].)

█ 5. The amendment of a legislative act is itself a legislative act. The power to legislate includes by necessary implication the power to amend existing legislation. █ Rezoning of use districts or changes of uses and restrictions within a district can be accomplished only through an amendment of a zoning ordinance, and the amendment must be made in the same mode as its original enactment. (Gov. Code, § 65804; 8 McQuillin, Municipal Corporations (3d ed. rev. 1957), Zoning, § 25.245, p. 594[4]; *Blotter* v. *Farrell,* 42 Cal.2d 804, 811 [6] [270 P.2d 481].)

█ We must therefore determine this question: *Did the city council act in an administrative capacity or in a legislative capacity in adopting ordinance No. 513?*

In view of the foregoing rules, it is evident that the amendment of legislation is necessarily legislative in character and that where, as here, the council amends a zoning ordinance so as to exclude from a particular zone property previously included in such zone, its act in amending is a legislative act and not an administrative act.

It is to be noted that this is an entirely different situation from one in which a zoning ordinance confers upon the council or an official the power to grant an easement or variance in a particular case. (See *Johnston* v. *Board of Supervisors, supra*; *Essick* v. *City of Los Angeles, supra.*)

█ Likewise, section 65804 of the Government Code[5] pro-

---

[3]In 8 McQuillin, Municipal Corporations (3d ed. rev. 1957), Zoning, § 25.65, p. 145, it is said: ". . . a zoning ordinance constitutes an exercise of a governmental and legislative function and, hence, is subject to change by the legislative power."

[4]In 8 McQuillin, Municipal Corporations (3d ed. rev. 1957), Zoning, § 25.245, p. 594, it is said: "Generally, rezoning of use districts or changes of uses and restrictions within a district can be accomplished only through an amendment of the zoning ordinance, and the amendment must be made in the same mode as its original enactment. Amendments are subject to limitations set by the general law or charter, and the amendment of such ordinances must be enacted as prescribed. Generally, the amendment can be effected only by an ordinance enacted by the municipal legislative body, and not by a mere resolution or order."

[5]Section 65804 of the Government Code reads: "Except as otherwise provided in this article, an amendment to a zoning ordinance which amendment changes any property from one zone to another or imposes

vides that the changing of property from one zone to another must be accomplished by an ordinance amending the original ordinance.

This conclusion is in accord with the views expressed by this court in several previous decisions. In *Dwyer* v. *City Council,* 200 Cal. 505, 515 [253 P. 932], we said: "A zoning ordinance as amended becomes in effect a different ordinance. Even if it be granted that a reclassification of an area as small as that involved in the instant case cannot be said to effect a new scheme, the same rule must necessarily be followed as would be applied if a larger area had been reclassified, and it may be observed that a piecemeal rezoning of small areas may result in a plan differing in vital particulars from that originally contemplated."

In *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 341 [5] [175 P.2d 542], it was held that whether an area of general use within a zone of limited use should be expanded was "clearly within the discretion of the legislative body of the city."

In *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [2] [202 P.2d 38, 7 A.L.R.2d 990], Mr. Chief Justice Gibson, speaking for this court, said: "In enacting zoning ordinances, the municipality performs a *legislative function,* and every intendment is in favor of the validity of such ordinances." (Italics added.)

█ It has been held that referendum is not available in street improvement cases. (*Chase* v. *Kalber,* 28 Cal.App. 561, 573 et seq. [153 P. 397]; *Starbuck* v. *City of Fullerton,* 34 Cal. App. 683, 684 et seq. [168 P. 583]; *St. John* v. *King,* 130 Cal. App. 356, 366 et seq. [20 P.2d 123].) However, it should be noted that the Legislature has prescribed procedural steps to be taken *after* the adoption of an ordinance providing for street improvements, which steps would be circumvented if the proceedings were subjected to either the initiative or the referendum. (*Chase* v. *Kalber, supra,* at p. 573 et seq.) But no such objection exists with respect to subjecting a zoning ordinance to the referendum, since the procedural steps prescribed by the Legislature in such a case must be taken *before* the adoption of the ordinance. On the other hand, the objection would apply where a zoning ordinance was adopted by a

---

any regulation listed in Section 65800 not theretofore imposed or removes or modifies any such regulation theretofore imposed shall be initiated and adopted in the same manner as required for the initiation and adoption of the original zoning ordinance."

general law city by means of an initiative measure without compliance with the general law relating to zoning. It has been held that an ordinance adopted under such circumstances was void for that reason. (*Hurst* v. *City of Burlingame,* 207 Cal. 134, 140 [5] [277 P. 308].)

It was pointed out in the Hurst case, *supra,* at page 140 [4] et seq., that the electors of a city or county can adopt under the initiative law only such ordinances as the legislative body thereof would have had the power to enact. (See also *Blotter* v. *Farrell,* 42 Cal.2d 804, 810 [5] [270 P.2d 481].) **[10]** Clearly, the legislative body of a general law city could not validly adopt a zoning ordinance without complying with the zoning act. Where such body has adopted a zoning ordinance, complying with the requirements of the act, there is no reason not to subject the ordinance to referendum. This principle was recognized in the Hurst case, *supra.*

There the proponents of the initiative measure relied upon *Dwyer* v. *City Council, supra,* and in answer to their contention this court said, at page 142: "The question of the operation of the initiative law to such local legislation was not involved in the Dwyer case and therefore no necessity arose to distinguish between the effectiveness of the initiative and the referendum in zoning cases. *If the point were involved it would undoubtedly be conceded that had the board of trustees of the City of Burlingame adopted a zoning ordinance as provided by the statute, its final action would be subject to the referendum provisions of the constitution and laws of the state, for the obvious reason that there is embodied in the enactment of a zoning ordinance such elements of legislative action as to subject the ordinance when adopted to the reserved legislative power of the electors of the city, when properly invoked, to approve or reject it.*" (Italics added.)

Whenever the council acts in its legislative capacity, the action it takes is subject to the constitutional right of referendum unless such action falls into one of the exceptions provided for in the Constitution.

The right of referendum with respect to zoning ordinances is essential for the protection of the rights of the electors of each city. A zoning ordinance can and does have a more direct and lasting effect upon property values and property owners within a city than almost any other type of ordinance. What is done with respect to one piece of property of necessity has an effect, good or bad, upon adjacent or nearby property.

Under the provisions of section 65804 of the Government Code, *supra*, no distinction is made between the council's act in adopting zoning ordinances and making amendments thereto. The section provides that an amendment to a zoning ordinance that changes any property from one zone to another shall be initiated and adopted in the same manner as an original zoning ordinance.

 In light of this section and the above authorities, where the wording of ordinances must be changed in order to accomplish the desired revision, the act is legislative and not administrative. On the other hand, where a regulation is changed pursuant to a provision of an existing ordinance permitting an administrative variance upon the finding of certain facts, the act is administrative. (*Wheeler* v. *Gregg*, 90 Cal.App.2d 348, 363 [7] [203 P.2d 37].)

Therefore, since defendant city, in adopting ordinance No. 513, was amending the general zoning ordinance to change certain property from one zone to another, it was acting pursuant to its inherent power to amend its legislative act and thus was acting in a legislative capacity. As it was acting in a legislative capacity in adopting the ordinance, the ordinance was subject to referendum.

### PLAINTIFFS' APPEAL

 Questions: First. *Was the zoning of plaintiffs' boulevard property for residential and agricultural use in the general zoning ordinance No. 441 unreasonable, oppressive, arbitrary and discriminatory, in the light of the trial court's finding (b), supra?*

*No.* It is settled that, although the courts will, of course, inquire as to whether a zoning ordinance is arbitrary or unreasonable, the decision of the zoning authorities as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power.

 The wisdom of the prohibitions and restrictions is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning authorities if there is any reasonable justification for their action. (*Lockard* v. *City of Los Angeles*, 33 Cal.2d 453, 461 [202 P.2d 38, 7

A.L.R.2d 990]; see also *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 337 et seq. [175 P.2d 542].)

As hereinabove stated, the trial court found that the highway conditions in front of plaintiffs' property rendered its boulevard frontage more reasonably usable and suitable for commercial purposes than for residential or agricultural purposes and that substantially all the property contiguous to and for some distance east and west along Foothill Boulevard was zoned for business. ▮ However, the findings and conclusions of the trial court as to the reasonableness of a zoning ordinance are not binding on an appellate court if the record shows that the question is debatable and that there may be a difference of opinion on the subject. (*Lockard* v. *City of Los Angeles, supra,* at p. 462 [6].) ▮ Giving due consideration to the basic physical facts appearing in the record, such as the character of plaintiffs' property, the nature of the surrounding territory, the use to which each has been put, and recent trends of development, we have concluded that the question of the reasonableness of the ordinance was debatable and that there was a reasonable basis for the action of the zoning authorities.

▮ Even assuming, however, as would be justified from the record, that plaintiffs' property would be more valuable if it were commercially zoned, such factor would not be determinative. As was said in *Lockard* v. *City of Los Angeles, supra,* at page 466 et seq.: "Exercises of the police power . . . are apt to have an adverse effect on property interests, and the fact that some hardship is experienced or that it may be more profitable to make other use of the property is not controlling in determining whether the regulations are arbitrary or unreasonable." ▮ Furthermore, in view of our conclusion that there was a reasonable basis for the action taken, the rule is applicable as stated in the Lockard case, *supra,* at page 462, where it is said that in cases of this kind "the function of this court is to determine whether the record shows a reasonable basis for the action of the zoning authorities, and, if the reasonableness of the ordinance is fairly debatable, the legislative determination will not be disturbed."

▮ Second. *Was ordinance No. 503 validly enacted?*

*No.* Ordinance No. 441 was adopted April 17, 1951. It set forth a procedure for redistricting, which procedure was followed in adopting ordinance No. 503. This procedure was in conflict with the state law in effect at the time ordinance No. 503 was adopted.

In 1951 (Stats. 1951, ch. 1690, p. 3897) the following was enacted by the Legislature: ''Any ordinance or amendment thereto passed pursuant to the Zoning Law of 1917 or the Conservation and Planning Act or its predecessor, is hereby confirmed, validated and declared legally effective.'' This validating act is part of section 14 of chapter 1690, which amended the Zoning Law of 1917.

In 1953 (Stats. 1953, ch. 1355, p. 2929) there was enacted by the Legislature the following: ''Any ordinances passed pursuant to the Planning Act, the Conservation and Planning Act, such Article 4 [Article 4, Chapter 10, Part 2, Division 3, Title 4 of the Government Code], or its predecessor, prior to the effective date of this act, are continued in force until repealed pursuant to law.'' This validating act is section 4 of chapter 1355, which chapter enacted the now effective provisions relating to the adoption of zoning ordinances by general law cities. Such provisions were also in effect at the time of the adoption of ordinance No. 503.

Subsequent to the adoption of ordinance No. 503, there has been no act validating any zoning ordinance.

Plaintiffs contend that by virtue of the validating acts of 1951 and 1953, all provisions of ordinance No. 441, regardless of whether they were contrary to the provisions of the Zoning Law of 1917, the 1947 Planning and Conservation Act, or the 1953 act relating to zoning, were declared valid and effective insofar as the city of Claremont was concerned and superseded the general law on that subject, and that since ordinance No. 503 was adopted under a procedure authorized by ordinance No. 441 it was validly enacted.

The purpose of a validating act is not to validate an ordinance the provisions of which are in conflict with the general law of the state covering the same subject matter. The purpose of a validating act is to declare, in effect, that although such an ordinance was not adopted in accordance with the procedure outlined by a general law of the state, the Legislature, as to that particular ordinance, declares that there has been substantial compliance with said provisions and, therefore, such ordinance shall be deemed to have been validly adopted the same as though there had been exact compliance.

Validating acts operate retroactively only and confer no validity upon acts subsequent thereto. (50 Am.Jur. (1944),

Statutes, § 481, p. 504; *People* ex rel. *Wangelin* v. *Pitcairn*, 371 Ill. 616 [21 N.E.2d 753, 755].)

If plaintiffs' position were adopted, it would give to a validating act a prospective operation. Under such a theory, ordinance No. 441, insofar as the procedural requirements are concerned, could remain effective forever even though the Legislature specifically has declared that the statewide policy is that a local legislative body should hold a public hearing before adopting substantive changes in a zoning ordinance. To give such force to a validating act is not reasonable, as it would be interpreting a validating act to say that any subsequent state law enacted on the subject should have no effect upon any city which prior to the adoption of the validating act had enacted an ordinance contrary to such later enacted state legislation, as long as such ordinance remained in effect. Under such an interpretation, there would be implied in the act of 1953, which is the current act relating to zoning, a provision that this act should apply to all general law cities of the State of California except those cities previously having enacted ordinances contrary to the provisions of this act.

To read into the 1953 act the exception that all cities previously having enacted an ordinance contrary to the provisions of the act would be exempt from certain provisions thereof as long as such ordinance remained in effect would prevent it from having a uniform application, and thus the act would be unconstitutional. (Cal. Const., art. I, § 11; *State* ex rel. *Keefe* v. *McInerney*, 63 Wyo. 280 [182 P.2d 28, 37]; *Mordecai* v. *Board of Supervisors*, 183 Cal. 434 [192 P. 40].) To read such an exception into the 1951 act would have the same effect.

Since the Legislature has determined that as a matter of public policy there must be a hearing before the local legislative body on any ordinance changing the permitted use of property within the city, such policy must apply equally to all cities within the same class. There is no reason either in law or otherwise for defendant city of Claremont to be treated differently in this respect from any other general law city within the state. Therefore, no zoning ordinance adopted by the city of Claremont after the effective date of the current act relating to zoning is valid unless a hearing thereon before the local legislative body was held, as required by that act. Admittedly, no such hearing was held with respect to ordi-

nance No. 503. Consequently, the ordinance was not validly enacted.

As indicated above, the city council, by ordinance No. 504, purportedly repealed ordinance No. 503 a week after its adoption. Plaintiffs contend that the procedure prescribed by the Government Code was not followed in the enactment of ordinance No. 504 and that it was therefore invalid. However, in view of our conclusion that ordinance No. 503 was not validly adopted, it is unnecessary to discuss whether or not ordinance No. 504, purportedly repealing it, ever became effective.

Third: *Did defendant city have a valid and subsisting easement over the most easterly portion of plaintiffs' boulevard frontage by virtue of the grant deed which plaintiffs had executed in favor of the city?*

*No.* The grant deed by its terms provided for the automatic defeasance of the grant should ordinance No. 513 be repealed or suspended or otherwise not take effect according to its terms. Therefore, since ordinance No. 513 was subject to referendum and a majority of the voters determined that it should not become effective, the deed which plaintiffs gave to defendant city granting an easement over their property was invalid by its terms.

### APPLICATION BY PLAINTIFFS FOR LEAVE TO PRODUCE ADDITIONAL EVIDENCE

Plaintiffs have filed an application for leave to produce certain additional evidence and have requested this court to make certain additional findings. However, in view of the conclusions reached herein, it is unnecessary to take additional evidence or make additional findings.

The judgment is reversed, and plaintiffs' application for leave to produce additional evidence and for this court to make additional findings is denied.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Assuming ordinance No. 513 which placed a portion of plaintiffs' property in a commercial zone (it had formerly been in residence and agricultural zone) was properly subject to a referendum, I believe that plaintiffs' constitutional rights have been invaded by application to them of the basic ordinance No. 441 which zoned their property for residence and agriculture. Plaintiffs' property lies along Foothill Boulevard, a highway which is not in the corporate limits of Clare-

mont. The trial court found: "[T]hat approximately 12,800 vehicles per weekday traverse at high speeds said Foothill Boulevard, also known as U. S. Highway 66, in front of plaintiffs' said Boulevard Frontage, resulting in an almost continuous traffic roar therefrom which can be heard for more than 300 feet from said highway; that at all hours of the day and night an almost continuous stream of automobiles, trucks and passenger buses pass in front of plaintiffs' said Boulevard Frontage in both an easterly and westerly direction and the speed, weight and volume of such traffic make the ground vibrate for a distance of at least forty feet from said Foothill Boulevard; that the volume of said traffic passing plaintiffs' said Boulevard Frontage materially and substantially increases on week-ends and on holidays . . . said highway is not posted as a restricted speed zone by any signs whatsoever; that eastbound traffic upon said Foothill Boulevard travels in such an unrestricted speed zone for more than five miles immediately to the west of plaintiffs' said Boulevard Frontage; that said Foothill Boulevard east of the intersection thereof with Mountain Avenue is in a restricted speed zone and is posted by speed limit signs of thirty-five (35) miles per hour; that the said traffic conditions upon said Foothill Boulevard render plaintiffs' said Boulevard Frontage more reasonably suitable and usable for commercial uses and purposes, as authorized and permitted in a C-2 Zone by the terms of said Zoning Ordinance No. 441, as amended, than for any other use or purpose. . . .

"That it is true: that plaintiffs' said property is now, and has been for many years, planted to citrus trees; that said vehicular traffic traveling upon said Foothill Boulevard emits a large volume of fumes, odors and gases; that said fumes, odors and gases emitted from said traffic upon Foothill Boulevard have progressively increased over the years; that as a direct and proximate consequence of said fumes, odors, and gases emitted from said traffic, the citrus trees along the northerly boundary of plaintiffs' said Boulevard Frontage for a depth of approximately 100 feet have been killed, or the productivity of said trees has been adversely affected thereby and as a consequence thereof plaintiffs' Boulevard Frontage is not reasonably suitable or usable for such agricultural purposes; that said traffic conditions render plaintiffs' said Boulevard Frontage more reasonably suitable and usable for C-2 commercial uses and purposes, as such uses and purposes are authorized and permitted in a C-2 Zone by the Zoning

Ordinance No. 441, as amended, than for any other use or purpose.

"That it is true: that the property west of Mountain Avenue on the northerly side of Foothill Boulevard and across from plaintiffs' said Boulevard Frontage, to a depth . . . (300) feet from the northerly side of Foothill Boulevard, is in the unincorporated territory of the County of Los Angeles and the same is in a C-1 Zone under the terms of said Los Angeles County Basic Zoning Ordinance No. 1494; that said County C-1 Zoned property on the north side of Foothill Boulevard is presently planted to lemon trees and was formerly a part of a large citrus grove extending northerly thereof; that said northerly balance or remainder of said former citrus grove is presently being subdivided for single family residences and such balance is presently owned by different owners than the persons owning said County C-1 zoned property; that said County C-1 zoned property across from plaintiffs' said Boulevard Frontage is more reasonably suitable for commercial purposes than any other use or purpose and the same is being presently held by the owners thereof for sale for commercial uses and purposes . . . that there is no real or substantial difference between said property on the north side of Foothill Boulevard west of Mountain Avenue and plaintiffs' said Boulevard Frontage and by reason thereof plaintiffs' said Boulevard Frontage is more reasonably suitable and usable for C-2 commercial uses and purposes, as such uses and purposes are authorized and permitted in a C-2 Zone by the terms of Zoning Ordinance No. 441, as amended, than for any other use or purpose. . . .

" [T]hat the property, to a depth of . . . (300) feet, situated in the unincorporated area of the County of Los Angeles and lying on both the northerly and southerly sides of Foothill Boulevard for a distance of several miles immediately westerly from plaintiffs' said Boulevard Frontage, is zoned for C-1 uses, as such uses are defined and permitted by the terms of said Los Angeles County Basic Zoning Ordinance No. 1494, as amended, and a substantial portion of such C-1 property is actually used for said C-1 uses; that the property immediately west of and adjoining plaintiffs' said Boulevard Frontage has been for several years, and now is, used for the sale of new and used automobile trailers, all of which have been, and now are, exhibited for sale by outdoor display on said property under and pursuant to a special permit or exception granted to the owners thereof by the Regional Planning Commission

of the County of Los Angeles . . . that in addition to said trailer sales business there are other commercial and business uses presently being made and carried on upon the property lying on the south side of said Foothill Boulevard between plaintiffs' said Boulevard Frontage and San Antonio Avenue on the West, all of which business uses are in the unincorporated territory of the County of Los Angeles and in the same block as plaintiffs' said Boulevard Frontage, to wit, a gasoline filling station, a restaurant and a liquor store and that by reason of such uses and business being presently made and carried on, said property on the south side of Foothill Boulevard between plaintiffs' said Boulevard Frontage and said San Antonio Avenue has a predominantly commercial character and aspect; that there is no real or substantial difference between said property in said unincorporated territory of the County of Los Angeles and plaintiffs' said Boulevard Frontage and the said zoning of such other property, and the uses to which the same is put, as aforesaid, render plaintiffs' said Boulevard Frontage more reasonably suitable and usable for commercial uses and purposes as authorized and permitted in a C-2 Zone by the terms of said Zoning Ordinance No. 441, as amended, of defendant City, than for any other use or purpose.

"That it is true: that at all times since about the year 1895 the northeast corner of plaintiffs' said Boulevard Frontage at the intersection of Foothill Boulevard and Mountain Avenue, consisting of a parcel of land of approximately 160 feet by 160 feet, both of said measurements being taken from the intersection of Foothill Boulevard and Mountain Avenue, has been, and now is, known as the 'Reservoir Site'; that since about the year 1895 said 'Reservoir Site' has been used for a commercial purpose, to wit: for a reservoir for the storage and distribution of water for a number of users; . . . that in addition to said reservoir there has been since about the year 1930, and there now is, a water well and pumping plant upon said 'Reservoir Site' for the commercial production of water; . . . that said The North Palomares Irrigation Company has been at all times since 1930, and now is, engaged in the business of producing and distributing water originating from said well and pumping plant to numerous customers and users; that said well and pumping plant emit noises in the pumping of water from said well, which noises can be heard a distance of approximately 160 feet away; that the aforesaid reservoir upon said 'Reservoir Site' provide an

adequate and reasonable screen to any commercial activities which might be carried on upon plaintiffs' said Boulevard Frontage; that the aforesaid uses made of and said activities carried on upon said 'Reservoir Site' render plaintiffs' said Boulevard Frontage more reasonably suitable and usable for commercial uses as authorized and permitted in a C-2 Zone by the terms of said Zoning Ordinance No. 441, as amended, of defendant City, than for any other use or purpose.

"That it is true: that plaintiffs own all of the real property immediately adjoining and lying southerly of plaintiffs' said Boulevard Frontage for its entire length and distance; that the use of plaintiffs' said Boulevard Frontage for commercial uses would not reasonably tend to damage or otherwise materially adversely affect any property or the value thereof owned by any third person.

"That it is true: that the said Downtown Business District of defendant City, presently zoned for C-2 purposes by the terms of Zoning Ordinance No. 441, as amended, includes an area of approximately one and one-half blocks, bounded on the north by 4th Street and on the south by 3rd Street and on the west by Alexander Avenue and on the east by the alley one-half block east of Yale Avenue, in which one and one-half blocks substantially all of the property is developed and improved with residences excepting a service station on the northeast corner of 3rd and Yale Avenue; that the remaining portion of said Downtown Business District is substantially completely occupied by stores and business buildings on lots of a frontage of approximately 50 feet or less, all of which are owned by numerous owners thereof with only three small vacant lots therein; that the property surrounding and immediately adjoining said Downtown Business District is substantially all built upon with residences and other buildings; that plaintiffs do not own the premises upon which plaintiffs conduct their said automobile dealership business and plaintiffs lease the same from two different landlords. . . ."

Summarizing, plaintiffs' property is not usable for either residential or agricultural purposes; it is surrounded by commercially used property; there is no room for expansion of commercial projects in the commercial zone in Claremont under ordinance No. 441, hence the business now there is granted a monopoly on the business activities in the community. Such constitutes a taking of property without due process of law and is unconstitutional. Plaintiffs are left with property which is worthless because they cannot use it

for commercial purposes by reason of the zoning ordinance and it is unusable for any other purpose. The only value of property lies in the present or prospective uses that may be made of it. The facts being as they are here, there is no conceivable basis for the exercise of the police power to accomplish a zoning objective. The police power in the zoning field may not be so exercised as to render a person's property valueless. Indeed, no reason is even suggested how plaintiffs' property could be limited to agriculture and residence uses here except to create a monopoly for that part of Claremont which is jointly zoned for commercial purposes. Not only do we have the finding of the trial court but the city council, *after a hearing,* came to the same conclusion in adopting ordinance No. 513. Certainly there was no reasonable basis for having plaintiffs' property zoned for residential and agricultural uses, when the planning authorities of Los Angeles County zoned all of the property around plaintiffs' as commercial. Thus such cases as *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990], are not in point. In fact they support the conclusion I have reached as it is there said: ". . . that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power." (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 460.) Under the reasoning in the Lockard case the class in which plaintiffs' property was zoned was arbitrary and capricious and its reasonableness is not "fairly debatable." The only time it was considered in the sense that a hearing was held was when ordinance No. 513 was passed which zoned plaintiffs' property as commercial. There was no hearing during the referendum election and the close vote on the matter showed that the question was more than "fairly debatable." The appellate court must, as Lockard says, "look beyond" the results of that election and determine the reasonableness of the zoning, giving consideration to the "character of the property," the "nature of the surrounding territory," the "use" to which it has been put and the "recent trends of development." All those factors point to only one conclusion here: The property has no use or value for residence or agriculture; the evidence shows this without dispute and the court so found. It is aptly said in *Pacific Palisades Assn.* v. *Huntington Beach,* 196 Cal. 211, 216 [237 P. 538, 40 A.L.R. 782] : 'A municipality is not permitted, under the guise of regulating business and segregating it to a particular district, to grant a monopoly

to business establishments and enterprises already situated in unrestricted districts. (*In re White,* 195 Cal. 516 [234 P. 396].)'' In *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 340 [175 P.2d 542], it is said that zoning ordinances are invalid ''Where the restrictions create a monopoly,'' ''*Where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance,*'' (emphasis added) and ''Where a small parcel is restricted and given less rights than the surrounding property, as where a lot in the center of a business or commercial district is limited to use for residential purposes, thereby creating an 'island' in the middle of a larger area devoted to other uses.'' While Lockard and Wilkins upheld the validity of the zoning there, they did not involve a case such as we have here, where the use of the adjacent property renders the land unsuited for the limited uses imposed by the zoning. A case closely in point is *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93]. There plaintiff's property was, as here, zoned residential, but it was near a large cannery which emitted noise and on a highway carrying heavy traffic and ''As described by the appellant, his property consists of five acres upon which he had prune trees at one time. These trees were removed because of the insects which came over to them from the piled boxes of the cannery across the street, and there is now nothing on it but a barn and a house worth about $1,000.'' (P. 215.) Similarly, here we have the noise and the lessened value of the property for agricultural uses. Holding the ordinance invalid the court said (p. 216) : ''Considering all the facts shown by the record, it clearly appears beyond question that the land owned by the appellant is entirely unsuited for residential purposes. *The adjoining cannery with the continuous noise which must necessarily result from twenty-four hour operation, creates a situation similar to that which is found in the industrial part of a great city.* Certainly no one wants to live next door to a large factory, and the question whether any consideration of public health, peace, safety or general welfare justifies the continued restriction upon the appellant's property which prohibits its use for commercial purposes is not fairly debatable. In its application to the land owned by the appellant, the ordinance is void.'' (Emphasis added.) The identical facts appear in the case at bar.

I would therefore affirm the judgment on the ground that ordinance No. 441 is unconstitutional as applied to plaintiffs'

property. This conclusion renders it unnecessary to determine whether ordinance No. 513 rezoning plaintiffs' property to commercial uses was subject to referendum or otherwise valid and effective.

Shenk, J., and Schauer, J., concurred.

The petition of plaintiffs and appellants for a rehearing was denied April 23, 1958. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.