Filed 6/29/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B300787 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA130416) |
| v. | |
| JOSE ALBERTO LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County. Kathleen Kennedy, Judge. Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez, Rama R. Maline and Nelson Ryan Richards, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Zahner, Chief Executive Officer, California District Attorneys Association, Michael A. Hestrin, District Attorney (Riverside), Alan D. Tate, Lead Deputy District Attorney, Jesse Male, Deputy District Attorney, Jason Anderson, District Attorney (San Bernardino), and James R. Secord, Deputy District Attorney, as Amicus Curiae on behalf of Plaintiff and Respondent.

---

Jose Alberto Lopez appeals the postjudgment order denying his petition for resentencing under Penal Code[1] section 1170.95. The superior court denied the petition on the basis of its conclusion that Senate Bill No. 1437[2] along with section 1170.95 as enacted by the legislation is unconstitutional because it impermissibly amended Proposition 7 (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7 (Proposition 7)) and Proposition 115 (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115 (Proposition 115)).  Lopez contends, and the Attorney General agrees, that the superior court erred in finding Senate Bill No. 1437 unconstitutional.  Amicus Curiae defends the superior court's ruling, contending that Senate Bill No. 1437 and section 1170.95 unconstitutionally amended Propositions 7 and 115, and section 1170.95 violates the separation of powers and contravenes the constitutional rights of victims under the Victims' Bill of Rights (Proposition 9, commonly known as "Marsy's Law"; Cal. Const., art. I, § 28).  Amicus Curiae further asserts that *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*) and *People v.*

---

[1] Undesignated statutory references are to the Penal Code.

[2] Enacted by the Legislature in 2018, Senate Bill No. 1437 (2017–2018 Reg. Sess.) became operative on January 1, 2019.

2

*Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270 (*Gooden*) were wrongly decided.

We reject Amicus Curiae's arguments and agree with Lopez and the Attorney General that Senate Bill No. 1437 and section 1170.95 as enacted by Senate Bill No. 1437 did not unconstitutionally amend Proposition 7 or Proposition 115.[3] We therefore reverse the postjudgment order and remand the matter for further proceedings in accordance with section 1170.95.

## FACTS AND PROCEDURAL BACKGROUND

Lopez was charged in 1996 with one count of murder committed for the benefit of and in association with a criminal street gang (§ 186.22, subd. (b)(1)) and three counts of attempted murder (§§ 664/187). On December 5, 1996, he entered an open plea of no contest to second degree murder.

The court found a factual basis for the plea based on Lopez's testimony about the events underlying the plea. Lopez admitted to being a member of the Mara Salvatrucha street gang in 1996. Around 11:30 p.m. on April 7, 1996, Lopez was in front of an apartment building on Westmoreland Avenue in Los Angeles with another Mara Salvatrucha gang member when he

---

[3] Because the superior court's ruling was based solely on its conclusion that Senate Bill No. 1437 impermissibly amended a ballot initiative approved by the voters, we do not address Amicus Curiae's alternative constitutional arguments. We note, however, that these arguments have been squarely rejected by our colleagues in the Fourth Appellate District as well as Division Six of the Second Appellate District. (See *People v. Johns* (June 8, 2020, E072412) __ Cal.App.5th __ [pp. 22–28] (*Johns*); *Lamoureux, supra*, 42 Cal.App.5th at pp. 252–266; *People v. Bucio* (2020) 48 Cal.App.5th 300, 312–314 (*Bucio*).)

saw two fellow gang members, "Youngster" and "Player," pull up in a car and speak to some individuals on the street. As Youngster and Player began to drive away, someone threw a bottle into the street, prompting them to exit the car and chase the bottle-thrower. Lopez joined the chase, following the others into the apartment building where a fistfight broke out on the staircase. After taking part in the fight, Lopez left the building and heard shots fired. He did not have a weapon, he did not shoot anyone, and he did not know who had fired the shots.

At the plea hearing the court stated, "It is undisputed that you were not the shooter. But as an aider and abettor you will be pleading to that count of second degree murder." The court sentenced Lopez to the mandatory term of 15 years to life. But over the prosecutor's objection, the court suspended sentence and placed appellant on probation for 10 years. As part of the plea agreement, the court also dismissed the three attempted murder counts.

In making its "very unusual grant of probation" the court struck most of the aggravating factors and noted Lopez's "extreme youth" (he was 18 at the time of the offense) and his "extremely minimal record." The court emphasized Lopez's "minor role in the confrontation," stating, "He was not the shooter. He was not the initiator. He was not involved in the robbery if there was one. He was present when an altercation arose, apparently spontaneously . . . among others who were present." The court also noted that Lopez had confessed and cooperated with police by providing names and identifying suspects.

The court warned Lopez that if he violated probation, "[he would] be getting 15 to life, period," and it "could cost [him] 15

4

years to life just hanging around" gang members.  Lopez agreed
to the terms of his probation, but soon after sentencing he
violated probation, and on March 27, 1997, he was sent to prison
for 15 years to life.

On January 2, 2019, Lopez filed a petition for resentencing
pursuant to section 1170.95.  The People opposed the petition on
the grounds that Senate Bill No. 1437 is unconstitutional and
Lopez does not qualify for resentencing under the new law in any
event.

The superior court summarily denied the petition on the
sole ground that Senate Bill No 1437 is unconstitutional because
it impermissibly amended Propositions 7 and 115.[4]

## DISCUSSION

### I.   Standard of Review

The postjudgment order denying Lopez's resentencing
petition is appealable.  (§ 1237, subd. (b).)  The superior court's
ruling on the constitutionality of Senate Bill No. 1437 presents a
pure question of law, which we review de novo.  (*People v.
Sanchez* (2017) 18 Cal.App.5th 727, 734.)

### II.  Senate Bill No. 1437 Did Not Unconstitutionally Amend an Initiative Statute

#### A. *Legal principles*

"We begin with the fundamental proposition that in
resolving a legal claim, a court should speak as narrowly as
possible and resort to invalidation of a statute only if doing so is

---

[4] The court deliberately narrowed potential issues for
review by rejecting arguments that Senate Bill No. 1437 violates
the separation of powers doctrine, denies due process, reopens
final judgments, violates the Governor's commutation and pardon
powers, or violates victims' rights laws.

5

necessary." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1047 (*Kelly*); *Dittus v. Cranston* (1959) 53 Cal.2d 284, 286 ["Courts should exercise judicial restraint in passing upon the acts of coordinate branches of government"].)  Indeed, there is a strong presumption favoring the constitutionality of the Legislature's acts (*Amwest Sur. Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253), and "courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity." (*People v. Falsetta* (1999) 21 Cal.4th 903, 912–913; *Dittus v. Cranston*, at p. 286 ["the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be declared unconstitutional"].)

While the Legislature may freely amend or repeal a statute enacted by the Legislature or by referendum, the California Constitution prohibits the Legislature from amending or repealing an initiative statute, unless otherwise specified by the initiative statute itself.  (*Johnston v. Claremont* (1958) 49 Cal.2d 826, 835 ["The amendment of a legislative act is itself a legislative act.  The power to legislate includes by necessary implication the power to amend existing legislation"]; Cal. Const., art. II, § 10, subd. (c) ["The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval"]; *People v. Prado* (2020) 49 Cal.App.5th 480, 484–485 (*Prado*).) Legislation amends an initiative in violation of the constitutional prohibition when it purports to " 'change an existing initiative statute by adding or taking from it some particular provision.' (*People v. Cooper* (2002) 27 Cal.4th 38, 44.)" (*People v. Superior*

6

*Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*); *People v. Solis* (2020) 46 Cal.App.5th 762, 771 (*Solis*).) "If the Legislature amends or repeals an initiative statute without the approval of the electorate, or otherwise violates the constitutional limitation, the legislative act 'is in contravention of the Constitution and hence void.' " (*Prado*, at p. 486; see *Kelly*, *supra*, 47 Cal.4th at p. 1012.)

This is not to say that "any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' " (*Pearson*, *supra*, 48 Cal.4th at p. 571, quoting *Kelly*, *supra*, 47 Cal.4th at pp. 1025–1026.) Thus, in deciding whether a particular legislative act amends an initiative statute, courts "need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Pearson*, at p. 571; *Gooden*, *supra*, 42 Cal.App.5th at pp. 279–280.) The resolution of this question requires a determination of what the electorate contemplated when it passed the initiative, which in turn is a matter of statutory interpretation. (*Pearson*, at p. 571; *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 ["the voters should get what they enacted, not more and not less"].)

"When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that

7

language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, *supra*, 48 Cal.4th at p. 571; *People v. Rizo* (2000) 22 Cal.4th 681, 685.)

### B. *Senate Bill No. 1437*

Amending the felony murder rule and effectively eliminating the natural and probable consequences doctrine as it relates to murder, the Legislature passed Senate Bill No. 1437 "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *Prado*, *supra*, 49 Cal.App.5th at p. 487.) To accomplish this objective, Senate Bill No. 1437 amended two state murder statutes: section 188 defining malice, and section 189, which classifies murder into two degrees and lists the predicate felonies for the crime of first degree felony murder. (See Stats. 2018, ch. 1015, §§ 2, 3.) Under the amended law, a participant in a specified felony during which a death occurs may be convicted of murder for that death "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(1)–(3); *Bucio*, *supra*, 48 Cal.App.5th at p. 307; *Lamoureux*, *supra*, 42

8

Cal.App.5th at p. 248.)  In addition, to be convicted of murder, a principal in the crime must have acted with malice aforethought; malice can no longer "be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); *Bucio*, *supra*, 48 Cal.App.5th at p. 307; *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 248–249 [Senate Bill No. 1437 " 'added a crucial limitation' to section 188, the statutory provision that defines malice for purposes of murder"].)

Senate Bill No. 1437 also added section 1170.95 to the Penal Code, making these changes to the murder statutes retroactive.  (See *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 256–257.)  Under section 1170.95, a person convicted of felony murder or murder under a natural and probable consequences theory may file a petition in the sentencing court to vacate the murder conviction and be resentenced on any remaining counts if all of the following conditions are met:  (1) the prosecution proceeded under a felony-murder or natural and probable consequences theory; (2) the petitioner was convicted of first or second degree murder following a trial or accepted a plea offer in lieu of trial; and (3) the petitioner could not be convicted of first or second degree murder because of the changes to sections 188 or 189 pursuant to Senate Bill No. 1437.  (§ 1170.95, subd. (a)(1)–(3); *Bucio*, *supra*, 48 Cal.App.5th at p. 307; *Lamoureux*, at p. 249.)

C. ***In enacting Senate Bill No. 1437, the Legislature acted within its Constitutional authority to amend legislative statutes and enact new laws***

The Legislature enacted former section 188 in 1872 and since then has amended it only three times:  in 1981 (Stats. 1981, ch. 404, § 6), in 1982 (Stats. 1982, ch. 893, § 4), and in 2018 with

9

Senate Bill No. 1437.[5]  California voters have never amended section 188 by initiative, nor has the electorate ever repealed and reenacted section 188 in an amended form.  (*Prado*, *supra*, 49 Cal.App.5th at pp. 487, 490.)

The Legislature also enacted former section 189 in 1872, and has amended the law numerous times since then.  California voters have amended section 189 only once, by adding six offenses to the list of predicate felonies for the crime of first degree felony murder in Proposition 115.[6]  (Initiative Measure

---

[5] Prior to the passage of Senate Bill No. 1437, former section 188 provided in relevant part:  "[M]alice may be express or implied.  It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.  It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.  [¶]  When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought."

Senate Bill No. 1437 amended former section 188 by adding subdivision (a)(3):  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."

[6] Prior to the passage of Senate Bill No. 1437 and as amended by Proposition 115, former section 189 provided in relevant part:  "All murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is

10

(Prop. 115), approved June 5, 1990, eff. June 6, 1990.)  Although
Proposition 115 effected a major reform to California's criminal
law by amending, repealing and adding several statutes and
constitutional provisions, the amendment to former section 189
was minor.  Significantly, the electorate has never—even with
the approval of Proposition 115—repealed and reenacted section
189 in an amended form.  (*Prado*, *supra*, 49 Cal.App.5th at
pp. 488, 490–491; see Gov. Code, § 9605 ["If a section or part of a
statute is amended, it is not to be considered as having been
repealed and reenacted in the amended form"]; *County of San
Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196,
209–210 ["Statutory provisions that are not actually reenacted
and are instead considered to ' "have been the law all along" '
[citation] cannot fairly be said to be part of a ballot measure"].)

The fact that Proposition 115 included the entire text of
Penal Code section 189—including the unchanged provisions
defining the offense—does not change the analysis:  "The
California Constitution required the inclusion of the unchanged
language.  (See Cal. Const., art. IV, § 9; *County of San Diego v.*

_____

committed in the perpetration of, or attempt to perpetrate, arson,
rape, carjacking, robbery, burglary, mayhem, *kidnapping, train
wrecking,* or any act punishable under *Section* 206, *286, 288,
288a, or 289*, or any murder which is perpetrated by means of
discharging a firearm from a motor vehicle, intentionally at
another person outside of the vehicle with the intent to inflict
death, is murder of the first degree.  All other kinds of murders
are of the second degree.  [¶]  . . .  [¶]  To prove the killing was
'deliberate and premeditated,' it shall not be necessary to prove
the defendant maturely and meaningfully reflected upon the
gravity of his or her act."  (Provisions added by Proposition 115 in
italics.)

11

*Commission on State Mandates*[, *supra*,] 6 Cal.5th [at p.] 206 ['a statute must be reenacted in full as amended if any part of it is amended'].)" (*Johns*, *supra*, __ Cal.App.5th __ [pp. 20–21].) "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process. This conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*County of San Diego v. Commission on State Mandates*, at p. 214.)

So it is here. As *Gooden* declared, Proposition 115 "restates a statutory provision in full (§ 189) to comply with constitutional mandates. Further, . . . there are no indicia in the language of the initiative or its ballot materials indicating the voters intended to address any provision of section 189, except the list of predicate felonies for purposes of the felony-murder rule. Therefore, we conclude the limiting language in Proposition 115 . . . does not preclude the Legislature from amending provisions of the reenacted statute that were subject to technical restatement to ensure compliance with article IV, section 9 of the California Constitution." (*Gooden, supra*, 42 Cal.App.5th at p. 288; see *Johns, supra*, __ Cal.App.5th __ [p. 21].)

In short, both sections 188 and 189 were enacted as, and remain, legislative statutes subject to amendment by the Legislature. (*Prado, supra*, 49 Cal.App.5th at pp. 490–491; *Johnston v. Claremont, supra*, 49 Cal.2d at p. 835.)

12

Section 1170.95, enacted with the passage of Senate Bill No. 1437, is a new legislative statute that allows certain eligible defendants convicted of murder to petition for dismissal of their murder convictions and be resentenced on any remaining counts of conviction.  The new law represents a proper exercise of the Legislature's power to enact new laws and, as discussed below, does not amend any initiative statute.

**D. *Senate Bill No. 1437 did not amend any initiative statute***

The superior court in this case found Senate Bill No. 1437 to be unconstitutional on the sole ground that it constitutes an impermissible amendment to a ballot initiative.  We disagree.

*1.  Senate Bill No. 1437 did not amend Proposition 7*

The express language of Proposition 7 dealt solely with the penalties for murder.  The initiative increased the minimum penalty for first degree murder from life with the possibility of parole after seven years to a term of 25 years to life.  (Prop. 7, §§ 1–2; § 190.)  The punishment for second degree murder was increased to 15 years to life from a term of five, six, or seven years.  (Prop. 7, §§ 1–2; § 190.)  In addition, Proposition 7 amended section 190.2 to expand the list of special circumstances under which a person convicted of first degree murder would be subject to a sentence of death or life without the possibility of parole.  (Prop. 7, §§ 5–6; § 190.2.)

By contrast, Senate Bill No. 1437 did not address punishment at all, but instead "amended the mental state requirements for murder, which 'is perhaps as close as one might hope to come to a core criminal offense "element." ' (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 493.)" (*Gooden, supra,* 42 Cal.App.5th at p. 282; *Solis, supra,* 46 Cal.App.5th at p. 779.)  Of

13

course, "[t]he definition of a crime is distinct from the punishment for a crime. . . .  Punishment is not an element of a crime but is the penalty imposed by judgment of a court of law on a person for committing a crime, which penalty may include death, confinement, or a fine, among other things."  (*Solis*, at p. 779, quoting *People v. Anderson* (2009) 47 Cal.4th 92, 119 ["a 'penalty provision is not an element of an offense under California law' "]; *People v. Ruiz* (2018) 4 Cal.5th 1100, 1107.)

Likewise, section 1170.95 as enacted by Senate Bill No. 1437 did not alter the law with respect to the penalties for murder, but simply created a postjudgment procedure for obtaining relief from a felony-murder conviction or a murder conviction under a natural and probable consequences theory which does not satisfy the elements for first or second degree murder because of the changes to sections 188 and 189. (§ 1170.95.)  Senate Bill No. 1437 thus "presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative.  [Citations.] The Legislature is free to enact such legislation without voter approval."  (*Gooden, supra*, 42 Cal.App.5th at p. 282; see *Kelly, supra*, 47 Cal.4th at p. 1025.)

Because Senate Bill No. 1437 did not concern the penalty for persons convicted of murder, and nothing in the text of Proposition 7 or its ballot materials indicated any intent to freeze the substantive elements of murder in place as they existed in 1978, Senate Bill No. 1437 cannot be considered an amendment to Proposition 7.  (*Gooden, supra*, 42 Cal.App.5th at p. 286; see *People v. Johns, supra*, __ Cal.App.5th __ [pp. 16–17]; *Prado, supra*, 49 Cal.App.5th at p. 492; *People v. Smith* (2020) 49 Cal.App.5th 85, pp. 91–92; *Bucio, supra*, 48 Cal.App.5th at

14

p. 308; *Solis*, *supra*, 46 Cal.App.5th at pp. 774–780; *People v. Cruz* (2020) 46 Cal.App.5th 740, 753–759 (*Cruz*); *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 250–251.[7])

  *2.  Senate Bill No. 1437 did not amend Proposition 115*

  Multiple courts have also concluded that, although "the two enactments do address related subject matter," Senate Bill No. 1437 did not amend Proposition 115.  (*Johns, supra*, __ Cal.App.5th __ [pp. 15, 20–21]; see *Prado, supra*, 49 Cal.App.5th at pp. 491–492; *Bucio, supra*, 48 Cal.App.5th at p. 312; *Solis, supra*, 46 Cal.App.5th at pp. 780–784; *Cruz, supra*, 46 Cal.App.5th at pp. 759–761; *Lamoureux, supra*, 42 Cal.App.5th at pp. 250–251; *Gooden, supra*, 42 Cal.App.5th at p. 287.)  The relevant question is whether "Senate Bill 1437 addresses a matter that [Proposition 115] specifically authorizes or prohibits." (*Gooden*, at p. 287.)  It does not:  "Senate Bill 1437 did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115.  It did not address any other conduct which might give rise to a conviction for murder.  Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden, supra*, 42 Cal.App.5th at p. 287.)

  *3.  Senate Bill No. 1437 did not contravene the will of the voters*

  In reaching its conclusions, *Gooden* reiterated "a bedrock principle underpinning the rule limiting legislative amendments to voter initiatives:  '[T]he voters should get what they enacted,

---

[7] Numerous unpublished decisions have reached the same conclusion based on the same reasoning.

15

not more and not less.' [Citation.]  Here, the voters who approved Proposition 7 and Proposition 115 got, and still have, precisely what they enacted—stronger sentences for persons convicted of murder and first degree felony-murder liability for deaths occurring during the commission or attempted commission of specified felony offenses.  By enacting Senate Bill 1437, the Legislature has neither undermined these initiatives nor impinged upon the will of the voters who passed them." (*Gooden*, *supra*, 42 Cal.App.5th at pp. 288–289.)

We agree with the analysis of our sister courts in *Johns*, *Bucio*, *Solis*, *Cruz*, *Lamoureux*, and *Gooden*, and conclude that Senate Bill No. 1437's changes to the felony-murder rule and elimination of the natural and probable consequences doctrine do not unconstitutionally amend Proposition 7 or Proposition 115. Accordingly, Lopez is entitled to have his petition considered on the merits.

## DISPOSITION

The superior court's postjudgment order is reversed and the matter is remanded for further proceedings under Penal Code section 1170.95.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

17