[L. A. No. 23084.   In Bank.   May 18, 1954.]

FRANCIS C. BLOTTER et al., Appellants, v. CHARLES D. FARRELL, as Mayor, etc., et al., Respondents.

Leonard A. Bock for Appellants.

Thompson & Colegate, Roy W. Colegate, City Attorney (Palm Springs), and Jerome J. Bunker, Assistant City Attorney, for Respondents.

CARTER, J.—Plaintiffs, who are citizens of the city of Palm Springs, appeal from a dismissal of their petition for writ of mandate and a judgment on the pleadings in favor of the defendants, Mayor Charles D. Farrell, the city council of the city of Palm Springs et al.

During February and March of 1952, plaintiffs as citizens of the city of Palm Springs, circulated two initiative petitions in said city. These petitions, which called for a special election for the purpose of adopting a proposed ordinance changing the boundary lines of the councilmanic districts, were presented to the city council on or about March 26, 1952, and by it referred to a committee for study and recommendation.

The council failed to act on the petitions, and on or about April 15, 1952, refused to submit the proposed ordinance to a vote of the electors or call an election for that purpose. Thereafter the plaintiffs commenced this proceeding to obtain a writ of mandate compelling the mayor and city council of the city of Palm Springs (hereinafter referred to as the defendants) to submit the proposed ordinance to the vote of the city electors.

The record indicates that the city of Palm Springs, a city of the sixth class, was incorporated in April, 1938. That as a part of the petition for incorporation, and pursuant to section 852d of the Municipal Corporations Act (now covered by Gov. Code, § 34870 et seq.), the city was laid out in seven councilmanic districts numbered one through seven. In their inception, these original districts each contained as nearly as possible the same voting strength.

During the years following the city's incorporation, some of the councilmanic districts experienced a large increase in population while the population of other districts increased very little. As a result of these population changes, the voting strength of the various councilmanic districts became seriously disproportionate. The extent of this inequality may be illustrated by the fact that in 1951 over 5,000 of the city's inhabitants resided in the first and second districts while the combined population of the fourth and seventh districts totaled less than 600 persons. This unequal distribution of

population and voting strength among the various councilmanic districts (as of October, 1951) gave the 1,046 registered voters of the five smallest districts the power to elect five councilmen while the 1,978 registered voters of the two largest districts could only elect two councilmen.

In an effort to bring about a redistricting and to equalize the population of the various councilmanic districts, plaintiffs circulated the aforementioned initiative petitions, which were eventually signed by more than 16 per cent of the city's registered voters. The defendants refused to act on the petitions and took the position that the city council was without authority to adopt an initiative ordinance for redistricting. Following this refusal to submit the proposed ordinance to a vote of the electors or to call an election for that purpose, plaintiffs commenced this proceeding to compel the defendants to act. Both plaintiffs and defendants moved for a judgment on the pleadings and after the oral arguments on said motions the trial court determined that the petition for writ of mandate failed to state facts sufficient to constitute a cause of action. The petition was dismissed and a judgment on the pleadings rendered in favor of the defendants.

Defendants' argument that the initiative petition can only be considered as one containing the signatures of not less than 10 per cent of the voters so as to come within section 1712[1] of the Elections Code rather than section 1711,[2] is without merit. The argument of the defendants is based upon two separate grounds: First that the petition for writ of mandate only covered the original initiative petition and secondly that plaintiffs had no authority to file a suppemental initiative petition.

In support of their argument that the petition for writ of mandate only covered the original initiative petition,

[1]"If the initiative petition is signed by not less than ten per cent of the voters of the city, and the ordinance petitioned for is not required to be, or for any reason is not, submitted to the voters at a special election, and is not passed without change by the legislative body, then the ordinance without alteration, shall be submitted by the legislative body to the voters at the next regular municipal election."

[2]"If the initiative petition is signed by not less than fifteen per cent of the voters of the city and contains a request that the ordinance be submitted immediately to a vote of the people at a special election, then the legislative body shall either:

"(a) Pass the ordinance without alteration at the regular meeting at which it is presented and within ten days after it is presented.

"(b) Immediately call a special election at which the ordinance, without alteration, shall be submitted to a vote of the voters of the city."

defendants pointed out that plaintiffs' original initiative petition was certified by the clerk on March 11, 1952, to contain the signatures of 11 per cent of the voters; that the supplemental initiative petition, bringing the number of signers up to more than 16 per cent of the registered voters was not certified until March 29, 1952; and that since Paragraph XV of the petition for writ of mandate stated that the initiative petitions were submitted by the clerk to the council "on or about March 26, 1952" it could only refer to the original initiative petition. It is thus argued that since the action of the city council complained of was the action taken on the 26th of March, only the original initiative petition was at issue and therefore section 1712 of the Elections Code rather than section 1711 should be applicable.

Defendants' reasoning fails to take into consideration Paragraph XVI of the petition for writ of mandate which provided in part that "although formal demand was, on the 15th day of April 1952 made on said Mayor and Council, the said Mayor and Council did fail, neglect and refuse to consider said proposed ordinance and petition and have refused to submit the same to the vote of the electors. . . ." Thus it appears that the petition for writ of mandate complained not only of the inaction at the council meeting of March 26 but also of the inaction after the demand of April 15, 1952, and therefore the demand involved both the original and the supplemental initiative petitions.

Defendants also argue that the supplemental initiative petition was unauthorized by the Elections Code and therefore section 1711 of the Elections Code (regarding initiative petitions which are signed by 15 per cent or more of the registered voters) is not applicable. This argument is based upon the fact that the original initiative petition containing the signature of 11 per cent of the voters was sufficient for the application of section 1712 and that therefore under section 1709 of the Elections Code a supplemental petition was not authorized. Defendants cite no authority upon which to base such a contention but merely refer us to the code section. Section 1709 provides that "If the clerk's certificate shows the petition to be insufficient, a supplemental petition, in form a duplicate of the original petition, bearing additional signatures, may be filed within ten days of the date of the certificate of insufficiency." This section permits a supplemental initiative petition when the original one is insufficient. The wording is permissive and does not appear to prohibit

supplemental initiative petitions in other cases. ■ As stated by this court in *Ley* v. *Dominguez,* 212 Cal. 587, 593 [299 P. 713], "It is well settled that the power of initiative and referendum, as exercised in this state, is the exercise by the people of a power *reserved* to them, and not the exercise of a right *granted* to them. . . . [Citations.] For that reason, and in order to protect the people of this state in the exercise of this reserved legislative power, statutory or charter provision dealing with the referendum should be afforded the same liberal construction afforded election statutes generally." (See also *Laam* v. *McLaren,* 28 Cal.App. 632 [153 P. 985].)

In view of the permissive wording of section 1709 and the rule of liberal construction, which is applicable to statutes dealing with the initiative power, it would appear that plaintiffs were not prohibited from filing a supplemental initiative petition in the instant case. The net result was a legally sufficient initiative petition containing the signatures of more than 16 per cent of the registered voters of the City of Palm Springs.

On appeal plaintiffs contend that the power of the electors of the city to district includes, by implication, the power to amend or change those districts; that an ordinance providing for a redistricting is available·by way of initiative; and that the city council was under a duty to either pass the proposed ordinance or submit it to the voters at a special election.

In regard to the power to redistrict, plaintiffs allege that it is based upon sections 34871, 34876, 35322, and 35323 of the Government Code. Section 34871 of the Government Code provides that "At any municipal election, or special election held for that purpose, the legislative body may submit to the electors an ordinance providing for the election of members of the legislative body by districts." Under the provisions of this section a city of the sixth class which has been electing the members of its legislative body from the city at large is authorized to submit to the electors an ordinance under which such members would be elected by districts. Section 34876[3] provides that where a city of the sixth class incorporates, the petition for incorporation may provide for the election of members of the legislative body by districts. By the enactment

---

[3]"Inclusion of provisions in petition for incorporation. If the petition for incorporation of a sixth class city provides for the election of members of the legislative body by districts and includes substantially the provisions required to be included in an ordinance providing for such election, the members shall be elected pursuant to this article."

of section 35322[4] the Legislature gave to cities of the sixth class authority to alter by ordinance the boundaries of wards or to create additional wards where new territory is annexed to said city. This is followed by section 35323 which provides that "In altering the boundaries of wards, or creating new wards, each ward shall contain, as nearly as possible, an equal number of inhabitants eligible to citizenship."

In substance the foregoing sections set forth the authority whereby a city of the sixth class may be divided into councilmanic districts and whereby the districts may be altered or new districts added when new territory is annexed to such city. No other specific reference to redistricting is made.

It is well recognized that "an ordinance proposed by the electors of a county or city of this state, under the Initiative Law must constitute such legislation as the legislative body of such county or city has the power to enact under the law granting, defining and limiting the powers of such body" (*Hurst* v. *City of Burlingame*, 207 Cal. 134, 140 [277 P. 308]), and therefore it must be determined whether any power or authority to redistrict existed. Granting that the power to divide a city into councilmanic districts is amply provided for under the foregoing sections, we are confronted with the problem of whether the power to district gives, by necessary implication, the power to redistrict. To put it another way, does the power to legislate on a particular subject include the power to repeal or amend such legislation or must such power be specifically spelled out in each instance?

In *Foster* v. *Police Comrs.*, 102 Cal. 483, 489 [37 P. 763, 41 Am.St.Rep. 194], this court stated that the power to legislate on a particular subject "necessarily includes the power to amend an existing regulation upon the same subject; . . ." In discussing the repeal of municipal legislation it has been stated that "It will be presumed that an ordinance duly passed continues to exist, and the burden is upon one claiming a repeal to show it. However, it is clearly within the power of the council of a city to repeal any ordinance

---

[4] "Territory annexed to city divided into wards: Alteration or addition of wards. Where territory is annexed to a city divided into wards, or to a city which later divides itself into wards, the legislative body, by ordinance, shall alter the boundaries of the city wards to include the annexed territory in one or more wards adjoining the territory, or make one or more additional wards out of the annexed territory. The number of wards shall not be increased to exceed the number which the city is allowed by law."

passed by it which does not affect the contractual relation of the city.'' (18 Cal.Jur. 215.)

Frequently a municipal corporation is given the express power by charter or statute to make, repeal or amend ordinances; however, such is not necessary since ''it is the general rule that power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them. It is patently obvious that the effectiveness of any legislative body would be entirely destroyed if the power to amend or repeal its legislative acts were taken away from it. . . . The power of repeal extends, generally speaking, to all ordinances. Indeed, a municipal corporation cannot abridge its own legislative powers by the passage of irrevocable ordinances. . . . Accordingly, in the absence of a valid provision to the contrary, a municipal council or assembly, having the power to legislate on, or exercise discretionary or regulatory authority over, any given subject may exercise that power at will by enacting or repealing an ordinance in relation to the subject.'' (McQuillin, Municipal Corporations, 3d ed., vol. 6, § 21.10.)

Thus it would appear that the power to legislate generally includes, by necessary implication, the power to amend or repeal existing legislation. This implied power to amend and repeal is especially necessary in regard to establishment of councilmanic boundaries since our democratic system of government requires, whenever possible, equality of representation. The problem of population equality among election areas is not confined to state or national levels, it exists whenever divisions of territory and population are made for the purpose of electing popular representatives.   Thus as a necessary consequence of our democratic system of government, the councilmanic districts must be changed periodically to prevent drastic population differences from destroying the representative system of government. In the instant case the Government Code contains no provision prohibiting redistricting, and, therefore, the specific power to district should, by necessary implication, include the power to redistrict.

Granting that the power to redistrict does exist, it must be determined whether or not such proposed redistricting legislation is available by way of initiative petition. In this respect it should be noted that the power to district under sections 34871 and 34876 of the Government Code is given exclusively to the electors, while the power to district or redistrict under sections 35322 and 35323 (when new territory is annexed) is given directly to the city council and

indirectly to the electors under their initiative powers granted by the Constitution of California. It is therein provided that ''The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law.'' (Cal. Const., art. IV, § 1.)

It is generally accepted that most forms of legislation may be proposed, repealed or amended by the proper exercise of the initiative (see McQuillin, Municipal Corporations, 3d ed., *supra*, vol. 6, § 21.11) and under the provisions of section 1701 of the Elections Code ''Any proposed ordinance may be submitted to the legislative body of the city by a petition filed with the clerk of the legislative body after being signed by not less than the number of voters specified in this chapter. . . .''

■ In view of the foregoing authorities it appears that the power to redistrict did exist and that such legislation could be proposed by initiative petition. ■ The only remaining question is whether or not the city council was under any duty to call a special election, when requested to do so, for the purpose of submitting the proposed ordinance to the electors. Section 1711 of the Elections Code provides that ''If the initiative petition is signed by not less than fifteen per cent of the voters of the city and contains a request that the ordinance be submitted immediately to a vote of the people at a special election, then the legislative body shall either: (a) Pass the ordinance without alteration at the regular meeting at which it is presented and within ten days after it is presented. (b) Immediately call a special election at which the ordinance without alteration, shall be submitted to a vote of the voters of the city.'' In the case at bar, the original and supplemental initiative petitions were signed by more than 16 per cent of the registered voters; the request was made that the ordinance be submitted to an immediate vote of the people; and the published notice of intention to circulate the initiative petition provided that ''the purpose of circulating this petition is to have placed upon a ballot at a special election to be held in this city, a law providing for redistricting. . . .'' It would thus appear that the city council was under a duty to either pass the proposed ordinance immediately or to call a special election for that purpose. Where a city council refuses to discharge its duty and fix a proper time for the election, it may be compelled to do so by

mandamus. (See *Locher* v. *Walsh*, 17 Cal.App. 727 [121 P. 712].)

We conclude, therefore, that the power to redistrict did exist by necessary implication; that an initiative petition was a proper method of proposing such legislation; that the petition here involved was sufficient for that purpose; and that when properly submitted the city council was under a duty to take immediate action.

The judgment is therefore reversed.

Traynor, J., Schauer, J., Spence, J., and Bray, J. pro tem.,* concurred.

SHENK, J.—I dissent.

It is of course conceded, as a general proposition, that an ordinance proposed by the electors of a city under the initiative law must constitute such legislation as the legislative body has the power to enact. Conversely it is true that if the city council was without power to adopt the redistricting ordinance here involved it could not be compelled to do so through the medium of an initiative petition, and likewise would not be authorized to submit it to the electorate of the city for adoption. (*Hurst* v. *City of Burlingame,* 207 Cal. 134, 140-141 [277 P. 308].)

In the present case the majority discover an implication in the provisions of the Government Code relating to the districting of cities to the effect that such cities also have the power to redistrict their territory. (Gov. Code, §§ 34871 and 34876.) Those sections are contained in that part of the Government Code setting out the procedures and conditions under which a city of the sixth class may provide for the election of its legislative body by districts, either at the time of its incorporation or at a time after the city has functioned with a legislative body chosen at large. If it be true that those and other sections imply a power to redistrict, as held by the majority, then the mode and method prescribed by the Legislature for districting a city should be followed when redistricting is sought to be brought about. Such special procedures are in substance set forth in Government Code, section 34874, as follows: "If three-fourths of the qualified electors of the City vote in favor of the ordinance [to district a city then functioning with a legislative body chosen at large], at the expiration of the terms of office of the members

---

*Assigned by Chairman of Judicial Council.

of the legislative body or when a vacancy occurs, members of the legislative body shall be elected by districts.'' However, redistricting the city as proposed by the ordinance in the present case would become valid and binding, if enacted under the initiative law, if ''a majority of the voters . . . vote in its favor,'' and it would ''be considered as adopted upon the date that the vote is declared by the canvassing board, and shall go into effect ten days thereafter.'' (Elec. Code, § 1715.) The discrepancies in procedure between the proposed method of redistricting and the one provided for in the Government Code are obvious and substantial. The initiative process does not accord applicable procedural safeguards afforded by the special legislation on the particular subject.

In *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, this court held invalid a zoning ordinance of the city of Burlingame enacted by initiative. Procedural provisions of the Zoning Act of 1917 (Stats. 1917, p. 1419) had not been complied with. The court stated at pages 140 and 141: ''It is too clear for controversy that if the Board of Trustees of the City of Burlingame had adopted the ordinance in question without compliance with the requirements of the Zoning Act above outlined said ordinance would have been inoperative and void. It is equally clear that the infirmity would not be cured by the purported adoption of the ordinance by the electors of the City under the initiative law. . . . The Zoning Act is a special statute dealing with a particular subject and must be deemed to be controlling over the initiative, which is general in its scope.'' The failure to comply with the districting provisions of the Government Code by the method through which the defendant city is sought to be redistricted in the present case creates a situation which cannot be materially distinguished from that in the Hurst case, and there is no reason why the same principles of law should not apply.

There is another good reason why the city council was not required to submit the proposed ordinance to the electorate. The effect of the ordinance, if enacted either by the council or under the initiative process, would be to oust the incumbents from a portion of the districts they now represent, leave some areas with two councilmen and others with none, create confusion within the newly created districts as to the right of recall by electors therein, and reduce to an absurdity the residential requirements of both councilmen and electors.

This would cast in doubt the validity of the status of the membership of the city council and any legislation or other official action of that body. It was never intended that an ordinance with the foregoing consequences could be passed by the council or be subject to the initiative process. In commenting on the scope of the reservation to the people of the power to enact legislation by initiative, it has been correctly stated that consideration must be given to the consequences of applying it to a particular act of legislation. Thus if it be found that the inevitable effect of direct legislation would be greatly to impair or wholly destroy the efficacy of some essential or indispensable governmental power, then in such case it is said that the courts may and should assume that the people intended no such result to flow from the application of those powers and that they do not so apply. (*Chase* v. *Kalber,* 28 Cal.App. 561, 569-570 [153 P. 397]; 18 Cal.Jur. 946-947; see also *Starbuck* v. *City of Fullerton,* 34 Cal.App. 683 [186 P. 583].)

The city council properly refused to pass or to submit to the electorate a provision which, if enacted, would not constitute proper legislation (*Hyde* v. *Wilde,* 51 Cal.App. 82, 84 [196 P. 118]), and mandamus should not be invoked to compel the performance of an act when, as here, there is no duty to perform it. I would affirm the judgment.

EDMONDS, J.—Admittedly, the Legislature has made no express provision for redistricting cities of the sixth class by an initiative measure, and to imply such a procedure, in my opinion, requires the court to reason from analogies which do not fit.

The conclusion that such a procedure is a proper one appears to be based upon this reasoning: (1) certain provisions of the Government Code permit the legislative body of the city to enact or submit to the voters measures relating to councilmanic districting; (2) as a general rule, the power to enact includes the power to amend or repeal legislation; (3) the initiative process includes those measures which the legislative body may enact.

I do not believe that a general power of redistricting properly may be implied from the limited situations provided for districting the city in the first instance. The situations relied upon as permitting districting are limited in number, and in each instance, a procedure is required which differs from that of the others. But in each case, the result is the

same—the city is divided into councilmanic districts. Accordingly, it is impossible to state, and the majority do not attempt to delineate, the exact basis and the proper procedure for implying a power to redistrict.

It seems clear that the fault lies not in the failure of the Legislature to indicate clearly a method of redistricting, but in its failure to provide for such a procedure at all. Rather than to attempt to create such a procedure by judicial legislation, it would be preferable for the court to await the action of the Legislature to enact a measure for redistricting with the procedural safeguards it may deem appropriate.

I would affirm the judgment.

Respondents' petition for a rehearing was denied June 16, 1954. Shenk, Acting C. J., and Edmonds, J., were of the opinion that the petition should be granted.