**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 29 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| JEREMY COLTHARP, an individual, and EDITH FRAZIER, an individual,<br><br>    Plaintiffs - Appellants,<br><br> v.<br><br>LARRY HERRERA, in his official capacity as City Clerk for the City of Long Beach,<br><br>    Defendant - Appellee. | No. 13-56589<br><br>D.C. No. 2:13-cv-03263-ABC-FFM<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted June 3, 2014
Pasadena, California

Before: TROTT and CALLAHAN, Circuit Judges, and BENNETT, District Judge.**

---

 *   This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

 **   The Honorable Mark W. Bennett, District Judge for the U.S. District Court for the Northern District of Iowa, sitting by designation.

Plaintiffs Jeremy Coltharp and Edith Frazier appeal the district court's decision denying their motion for a preliminary injunction seeking to compel Larry Herrera, the City Clerk of the City of Long Beach, to certify their ballot measure for the next regularly scheduled election. Plaintiffs argue that the district court's interpretation of the California Elections Code was erroneous and that Herrera should have certified the measure as qualifying for the next regular election despite the fact that their initiative petition proposed a vote on the measure at a special election. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1),[1] and we affirm.[2]

California Elections Code § 9214 appears to indicate that an elections official may not validate a petition containing "a request that the ordinance be submitted immediately to a vote of the people at a special election" unless it obtains valid signatures from at least 15% of the registered voters. Section 9215(b) further suggests that if a petition obtains support from 10% of the registered voters,

_____

[1] We reject Herrera's contention that the district court lacked subject matter jurisdiction. The Plaintiffs asserted federal claims in their pleadings and, consequently, there is federal question jurisdiction under 28 U.S.C. § 1331 even if the Plaintiffs' claims are not meritorious. *See Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1131 (9th Cir. 2012) ("Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits." (citation omitted)), *cert. denied*, 133 S. Ct. 1814 (2013).

[2] Because the parties are aware of the facts, procedural events and applicable law underlying the dispute, we recite only such information as is necessary to explain our decision.

the city council may set the initiative for the next regularly scheduled election "unless the ordinance petitioned for is required to be, or for some reason is, submitted to the voters at a special election." The district court found that Plaintiffs were unlikely to succeed on the merits because Herrera's sampling indicated that their petition failed to obtain support from 15% of the registered voters and, by its own terms, their petition only sought a vote at a special election. *Cf. Mission Springs Water Dist. v. Verjil*, 160 Cal. Rptr. 3d 524, 529 n.2 (Cal. Ct. App. 2013) (suggesting that the wording of a petition can be significant in determining the type of election required, as a petition indicating that initiatives should be submitted to the voters "at a special election or the next regular election" was "probably insufficient to *require* a special election" (ellipses omitted)).[3] The district court relied on § 9215(b), reading it to preclude a petition designated for a special election from being considered for placement on a regular election ballot. This reading of the statute is consistent with the principle that the voters should have sufficient information to allow them to "intelligently evaluate whether to sign

---

[3] Our dissenting colleague suggests that *Mission Springs* supports the Plaintiffs' position. However, as noted, in that case (unlike the present one), the petition sought a vote at either a special election or the next regular election. *See id.*

3

the initiative petition and avoid confusion."[4] *Mervyn's v. Reyes*, 81 Cal. Rptr. 2d 148, 151 (Cal. Ct. App. 1998).

Plaintiffs plausibly argue that the district court's interpretation was incorrect. *See Blotter v. Farrell*, 270 P.2d 481, 482-84 (Cal. 1954) (suggesting that a petition calling for a special election, which obtained more than 10% of the signatures of the registered voters but less than 15%, would qualify for a vote at a regular election under § 9215's predecessor statute). Indeed, it is possible that the language in § 9215(b) simply means that the city council cannot delay a measure that qualified for a special election by placing it on a regular election ballot scheduled for a later time.

Nonetheless, we are here concerned only with the denial of a preliminary injunction, which we review for abuse of discretion. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation and emphasis omitted). Moreover,

---

[4] A petition's language can matter. Although perhaps counter-intuitive, in light of the historic differences in voter turnout for special elections versus regular elections, some individuals who signed the petition may well have not wanted the initiative placed on a regular election ballot where it would likely face a larger and potentially less favorable pool of likely voters.

where a party seeks a mandatory injunction that goes beyond maintaining the status quo, "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted). Plaintiffs have not made such a showing here. Although they have established that the statutory language is ambiguous, they have not clearly demonstrated that they are likely to succeed on the merits, are likely to suffer irreparable harm, that the balance of the equities tips in their favor, or that an injunction is in the public interest. Plaintiffs may have established a possibility of success on the merits, but a possibility is not the same as a likelihood of success.[5] *See Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003).

A showing of "serious questions going to the merits" may be sufficient to warrant issuance of a preliminary injunction where the balance of the hardships

---

[5] Although some decisions can be construed as supporting one interpretation or another, none of the decisions from the California courts directly address the issue raised here. *See Engebretson v. Mahoney*, 724 F.3d 1034, 1040 (9th Cir. 2013) (indicating that prior rulings were not binding precedent on issues that were not squarely addressed). Nor do we view the post hoc legislative history cited by our dissenting colleague as controlling or even instructive. *See Grupe Dev. Co. v. Superior Court*, 844 P.2d 545, 551 (Cal. 1993) (noting that the legislative counsel's opinion that was issued after a statute was adopted was "a *post hoc* expression of the Legislative Counsel's opinion of what the Legislature meant when it adopted [the statute]; and like any such opinion . . . it is only as persuasive as its reasoning").

5

tips sharply in the plaintiff's favor and the other factors are satisfied. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (citation omitted). However, Plaintiffs have not shown that the balance of the hardships tips sharply in their favor or that they have satisfied the other factors. Indeed, all of the Plaintiffs' arguments on the balance of the equities and public interest factors presume that their interpretation of the Elections Code is correct, which they have not established. Plaintiffs have no right to vote for a measure if it did not qualify for the ballot—their interests as sponsors or signors of the petition are only relevant if they establish that their interpretation is correct. Thus, as Plaintiffs have not clearly shown that Herrera violated the Elections Code, they have not demonstrated that the balance of the equities and public interest weigh in their favor.

Additionally, as Plaintiffs' counsel acknowledged at oral argument, the Plaintiffs did not pay the costs of circulating the petition in the first instance and cannot claim that they suffered any pecuniary harm.[6] Moreover, the Elections

---

[6] Despite this concession, our dissenting colleague takes issue with this statement. We note that the group that funded the signature drive is not a party and the Plaintiffs have not claimed an interest in the time and effort spent by others to collect the signatures. Although Coltharp generally asserts that he "asked" others to sign the petition, the true extent of the Plaintiffs' personal participation in the signature drive is unclear on the present record.

6

Code does not preclude Plaintiffs from filing a new petition. Cal. Elec. Code § 9115(e). Plaintiffs could have avoided any resulting delay by drafting their petition to alternatively seek placement of the measure on the regular election ballot, but they did not do so. Consequently, the district court did not abuse its discretion because the Plaintiffs did not carry their burden of showing that they were entitled to extraordinary relief in the form of a mandatory preliminary injunction.

We note that decisions on motions for a preliminary injunction are made on less than a full record and leave "open the final determination of the merits of the case." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (citation omitted). This appeal presents a difficult issue which may benefit from further development below. Our decision does not dictate the final determination of the merits below.

**AFFIRMED.**

*Coltharp v. Herrera*, No. 13-56589

BENNETT, District Judge, dissenting:

I respectfully disagree and thus dissent.  In my view, the district court committed reversible error by not granting Plaintiffs' preliminary injunction for three reasons:  (1) Plaintiffs are likely to succeed on the merits; (2) Plaintiffs demonstrated that they are likely to suffer irreparable harm; and (3) the balance of hardships and the consideration of the public interest favor Plaintiffs.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009).

First, the district court abused its discretion by misinterpreting Cal. Elec. Code § 9215(b)—i.e., it made "an erroneous review of the law."  *See League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755. 759 (9th Cir. 2014) (citation omitted); *see also United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994) ("A trial court abuses its discretion by erroneously interpreting the law.").  More specifically, the district court read § 9215(b) to preclude Plaintiffs' initiative from being placed on the next "regular election" with no support in the case law or reason.  *Native Am. Sacred Site & Envtl. Prot. Ass'n (NASSEPA) v. City of San Juan Capistrano*, 16 Cal. Rptr. 3 146, 149 (Cal. Ct. App. 2004).  Instead, the district court's reading of § 9215(b) is bottomed on this one fact:  Plaintiffs' petition called for a "special election."

The plain meaning of the statute provides that a petition, obtaining 10% of registered voters' signatures, qualifies for the next regular election. *See* Cal. Elec. Code §§ 1405(b), 9215(b). In *Blotter v. Farrell*, 42 Cal. 2d 804, 807–09 (Cal. 1954), California's Supreme Court implied that, under California law, a petition calling for a "special election," and obtaining more than 10% of registered voters' signatures, but less than 15%, qualifies under § 9215's predecessor for the next "regular election." *See* Cal. Elec. Code § 9215(b); *see also* West's Cal. Code Forms, Elec. § 9201 Form 1 (5th ed.). Thus, although Plaintiffs' petition called for a "special election," it is consistent with the statute's plain and common sense meaning and construction and case law to compel Herrera to certify the initiative to the city council for the next "regular election."

Indeed, the majority's opinion cites to authority that supports the dissent's position that Herrera should be compelled to certify the Plaintiffs' initiative. For example, the majority refers to *Mission Springs Water Dist. v. Verjil*, 160 Cal. Rptr. 3d 524, 529 n.2 (Cal. Ct. App. 2013), in which the plaintiffs' petitions requested that initiatives be submitted to voters "at a special election . . . or the . . . next regular election." *Id.* The majority focuses its attention on the appellate court's reasoning that "[t]his wording was probably insufficient to *require* a special election." *Id.* In doing so, the majority overlooks the case's material facts.

2

Furthermore, in *Mission Springs Water Dist.*, the defendant, the registrar of the voters, "was statutorily required to order that the initiatives be placed on the ballot at the next general election" once the district was notified that the initiatives had received enough signatures. *Id.* at 529. In the case at bar, the Plaintiffs are likely to succeed on the merits. This is because Herrera's sampling indicated that the Plaintiffs' petition obtained support from more than 10% of the registered voters required to be placed on the ballot for the next regular election.

The Plaintiffs' reading of § 9215 is also consistent with the structure of the statute, which creates higher hurdles for special elections, but eases them for general elections. Otherwise, form (in this case the form of the petition) is exalted over the substance (the rights of the voters). On the other hand, relying on *Mervyn's v. Reyes*, the majority writes, "[The defendant's] reading of the statute [to preclude a petition designated for a special election from being considered for placement on a regular election] is consistent with the principle that the voters should have sufficient information to allow them to 'intelligently evaluate whether to sign the initiative petition and avoid confusion." 81 Cal. Rptr. 2d 148, 151 (Cal. Ct. App. 1998). Yet, the facts in *Mervyn's* are markedly distinct from the facts in this case.

In *Mervyn's*, the initiative petition did not call for a special election in the petition; rather, the petition "*failed to contain the text of the proposed measure.*" *Id.* (emphasis added). Moreover, the California Court of Appeals took issue with the substance of the petition because relevant sections of the petition were left out. "The approximately 17 pages of general plan sections omitted from the petition were the key element of the initiative," wrote the appellate court. *Id.* at 154.

By contrast, unlike in *Mervyn's*, here voters that signed the Plaintiffs' petition were "advised which laws are being challenged and which will remain the same." *Id.* The petition is clear as to what "add[itions]" and "amend[ments]" will be made to the Long Beach Municipal Code if the law is approved by the voters of the City of Long Beach. If one peruses the Plaintiffs' petition and the information it provides, one would be hard pressed to argue that the Plaintiffs' petition did not allow the registered voters to "intelligently evaluate whether to sign the initiative petition and avoid confusion," or meet "the full text requirement" based on *Mervyn's*. *Id.* at 151. Elsewhere in *Mervyn's*, the appellate court explained, "[I]t has long been our judicial policy to apply a liberal construction to [the initiative and referendum power of the voters] where it is challenged in order that the right be not improperly annulled." *Id.* at 152. The majority should heed the appellate court's implied warning.

4

The legislative history also suggests that the governing body "will [be] force[d]" to put an initiative on a special election, *only if* the initiative garners "the higher of the two thresholds" or 15% of the electorates' vote. *See* California Bill Analysis, S.B. 1424 Sen., May, 03, 2000. Therefore, Plaintiffs' initiative was *not* "required to be" submitted to the voters at a special election as it did not meet the "higher of the two thresholds." Nor was it "for some reason" submitted to the voters at a special election to bar it from being on the next regular election. *See* Cal. Elec. Code § 9215(b). Contrary to the district court's holding, the legislative history does *not* suggest an initiative is "required to be" on a special election if the supporters of an initiative "request" a special election. Therefore, the district court's opinion mistakenly conflates the term "requirement" under § 9215(b) with Plaintiffs' "request" to be on a special election.

Bolstering Plaintiffs' case, California courts have explained their duty to "jealously" guard voters' rights to directly propose legislation, and they must also accord "extraordinarily broad deference" to that right. *Native Am. Sacred Site*, 16 Cal. Rptr. 3d at 149. *Blotter*, for example, made clear that any statute "dealing with the initiative power" must be "afforded" the longstanding "rule of liberal construction." *Blotter*, 42 Cal.2d at 809.

5

Here, Herrera acted unreasonably, and beyond his "purely ministerial" powers, by exercising discretion to block Plaintiffs' initiative. *Friends of Bay Meadows v. City of San Mateo*, 68 Cal. Rptr. 3d 916, 923 (Cal. Ct. App. 2007). This is because Herrera calculated that there were 939 valid signatures, which exceeded 110% of the prorated number of signatures needed to certify an initiative for the next regular election. Cal. Elec. Code § 9115(b). Based on *Blotter*'s rule of "liberal construction," the district court abused its discretion by not granting Plaintiffs injunctive relief. *See Blotter*, 42 Cal. 2d at 809; *see also League of Wilderness Defenders*, 752 F.3d at 759; *see also Totten v. Bd. of Supervisors of Cnty. of Ventura*, 43 Cal. Rptr. 3d 244, 249 (Cal. Ct. App. 2006) (noting that "if doubts can reasonably be resolved in favor of the use of the reserve initiative power, courts will preserve it") (internal quotation marks, brackets, and citation omitted).

Second, the district court made a "clearly erroneous assessment of the evidence" as the evidence shows Plaintiffs will suffer irreparable harm if a preliminary injunction is not granted on their behalf. *See League of Wilderness*

6

*Defenders*, 752 F.3d at 759 (citation omitted).  Like the district court,[1] the majority emphasizes this fact:  "[A]s Plaintiffs' counsel acknowledged at oral argument, they did not pay the costs of circulating the petition in the first instance and cannot claim that they have suffered any pecuniary harm."   I disagree.

Plaintiffs spent six months of their time and energy collecting 43,159 signatures.  It cost the Long Beach Citizens' and Patients' Rights Political Action Committee $132,300 to collect the signatures.  Plaintiffs *did* suffer pecuniary harms—they spent *six months* collecting signatures, and requiring Plaintiffs to repeat the gathering of the names on a new petition would cause further harm.  *See Rubin v. Air China Ltd.*, No. 5:10–CV–05110, 2011 WL 2463271, *4 (N.D. Cal. June 21, 2011) (citation omitted) ("Time is money, after all. . . .").

In addition, Plaintiffs continue to suffer non-pecuniary harms as they cannot exercise their fundamental right to vote.  *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012) (indicating that "a long line of precedent establish[es] that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" and elaborating that a "delay of even a day or two may be intolerable" for a party)

_____

[1] " . . . [N]either Plaintiff personally contributed money to this petition effort.  Rather, the financial contributions have largely come from businesses seeking to sell medical marijuana in the City."

7

(citations omitted). Plaintiffs' personal stakes are also affected: Coltharp sponsored the initiative and leads the PAC that funded the efforts, and Plaintiffs signed the initiative's petition as city residents. The majority also overlooks the harms Plaintiffs will endure if they are forced to recirculate the petition.

Third, the district court made a "clearly erroneous assessment of the evidence" as the evidence shows the balance of hardships and the consideration of the public interest weigh in favor of the Plaintiffs. *See League of Wilderness Defenders*, 752 F.3d at 759 (citation omitted). As noted above, Plaintiffs continue to endure significant hardships. Also, granting injunctive relief will benefit the public because it will protect citizens' rights to propose initiatives and vote and will counter Herrera's unlawful blocking of the initiative. *See N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest."). Placing the initiative on the next "regular," not "special," election will also save the city approximately $1.5 million.

I also consider the hardships confronting Herrera and the public interests that favor Herrera's position. At oral argument, Herrera's counsel was asked whether Herrera would be harmed if the next regular election ballot included Plaintiffs' initiative. The counselor's reply was telling; no harms came to her mind at that

8

time. The district court's argument as to the public's interest, which was adopted by Herrera, is premised on the mistaken belief that its interpretation of § 9215(b) is accurate.[2]

Finally, the majority suggests that the crux of this case is what Coltharp needs to show on an appeal from a denial of a motion for a preliminary injunction. The majority recognizes that the "Plaintiffs plausibly argue that the district court's interpretation [of § 9215(b)] was incorrect." However, the majority reiterates the standard of review, which clarifies why it distrusts the Plaintiffs' argument: "[W]e are here concerned only with the denial of a preliminary injunction, which we review for abuse of discretion." *Shell Offshore, Inc. v. Greenpeace , Inc.*, 709 F.3d 1281, 1286 (9th Cir. 2013). The majority continues: "'[W]here a party seeks a mandatory injunction that goes beyond maintaining the status quo, "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). In other words, the majority grounds its decision on the belief that the Plaintiffs did not overcome the high hurdle required to warrant the issuance of a preliminary injunction. I cannot agree.

---

[2] "In this case, the public's substantial interest in ensuring the California Elections Code is followed outweighs the cost of recirculating the petition."

The majority refers to a "sliding scale" injunction standard, which survived the United States Supreme Court's ruling in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The "sliding scale" injunction standard, also referred to as the "serious questions" test, was articulated by the Ninth Circuit Court of Appeals as follows: "'[S]erious questions going to the merits' and a hardship balance that tips sharply in the plaintiff's favor can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 740 (9th Cir. 2011) (quoting *Alliance for Wild Rockies v. Cottrel*, 622 F.3d 1045, 1049–50, 1053 (9th Cir. 2010)).

Because the likelihood of harm to the Plaintiffs is obvious and great, and the requested injunction is in the public's interest, the Plaintiffs are *not* required to show a likelihood of success on the merits as the majority suggests. *Id.* Rather, the Plaintiffs only need to show that serious issues of law and fact have been raised. *Id.* The Plaintiffs have met this burden. Accordingly, they were entitled to a preliminary injunction, and the district court abused its discretion by failing to grant the injunction.

In sum, I recommend Herrera be required to certify the petition to the city council for the next regular election on November 4, 2014. After receiving

10

"confirmation" from Herrera that Plaintiffs acquired 10% of the voters' signatures, and above the 110% threshold of the prorated amount of signatures needed to qualify for the next regular election, the city council would be required to act in accordance with § 9215. *See* Cal. Elec. Code § 9115(b); *see also MHC Fin. Ltd. P'ship Two v. City of Santee*, 23 Cal. Rptr. 3d 622, 626 (Cal. Ct. App. 2005) (holding that if a city council receives "confirmation" from its election official that a petition was signed by more than 10% of the city's registered voters, it must follow § 9215). If the city council does not discharge its duty, it could "be compelled to do so by mandamus." *Blotter*, 42 Cal. 2d at 812–813 (citation omitted).