BENNETT, District Judge,
dissenting:
I respectfully disagree and thus dissent. In my view, the district court committed reversible error by not granting Plaintiffs’ preliminary injunction for three reasons: (1) Plaintiffs are likely to succeed on the merits; (2) Plaintiffs demonstrated that they are likely to suffer irreparable harm; and (3) the balance of hardships and the consideration of the public interest favor Plaintiffs. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); see also Klein v. City of San Clemente, 584 F.3d 1196, 1199 (9th Cir.2009).
First, the district court abused its discretion by misinterpreting Cal. Elec.Code § 9215(b) — i.e., it made “an erroneous review of the law.” See League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 759 (9th Cir.2014) (citation omitted); see also United States v. Beltran-Gutierrez, 19 F.3d 1287, 1289 (9th Cir.1994) (“A trial court abuses its discretion by erroneously interpreting the law.”). More specifically, the district court read § 9215(b) to preclude Plaintiffs’ initiative from being placed on the next “regular election” with no support in the case law or reason. Native Am. Sacred Site & Envtl. Prot. Ass’n (NASSEPA) v. City of San Juan Capistrano, 120 Cal.App.4th 961, 16 Cal.Rptr.3d 146, 149 (2004). Instead, the district court’s reading of § 9215(b) is bottomed on this one fact: Plaintiffs’ petition called for a “special election.”
The plain meaning of the statute provides that a petition, obtaining 10% of registered voters’ signatures, qualifies for the next regular election. See Cal. Elec. Code §§ 1405(b), 9215(b). In Blotter v. Farrell, 42 Cal.2d 804, 807-09, 270 P.2d 481 (Cal.1954), California’s Supreme Court implied that, under California law, a petition calling for a “special election,” and obtaining more than 10% of registered voters’ signatures, but less than 15%, qualifies under § 9215’s predecessor for the next “regular election.” See Cal. Elec.Code § 9215(b); see also West’s Cal.Code Forms, Elec. § 9201 Form 1 (5th ed.). Thus, although Plaintiffs’ petition called *338 for a “special election,” it is consistent with the statute’s plain and common sense meaning and construction and case law to compel Herrera to certify the initiative to the city council for the next “regular election.”
Indeed, the majority’s opinion cites to authority that supports the dissent’s position that Herrera should be compelled to certify the Plaintiffs’ initiative. For example, the majority refers to Mission Springs Water Dist. v. Verjil, 218 Cal.App.4th 892, 160 Cal.Rptr.3d 524, 529 n. 2 (2013), in which the plaintiffs’ petitions requested that initiatives be submitted to voters “at a special election ... or the ... next regular election.” Id. The majority focuses its attention on the appellate court’s reasoning that “[t]his wording was probably insufficient to require a special election.” Id. In doing so, the majority overlooks the case’s material facts.
Furthermore, in Mission Springs Water Dist., the defendant, the registrar of the voters, “was statutorily required to order that the initiatives be placed on the ballot at the next general election” once the district was notified that the initiatives had received enough signatures. Id. at 529. In the case at bar, the Plaintiffs are likely to succeed on the merits. This is because Herrera’s sampling indicated that the Plaintiffs’ petition obtained support from more than 10% of the registered voters required to be placed on the ballot for the next regular election.
The Plaintiffs’ reading of § 9215 is also consistent with the structure of the statute, which creates higher hurdles for special elections, but eases them for general elections. Otherwise, form (in this case the form of the petition) is exalted over the substance (the rights of the voters). On the other hand, relying on Mervyn’s v. Reyes, the majority writes, “[The defendant’s] reading of the statute [to preclude a petition designated for a special election from being considered for placement on a regular election] is consistent with the principle that the voters should have sufficient information to allow them to ‘intelligently evaluate whether to sign the initiative petition and avoid confusion.’ ” 69 Cal.App.4th 93, 81 Cal.Rptr.2d 148, 151 (1998). Yet, the facts in Mervyn’s are markedly distinct from the facts in this case.
In Mervyn’s, the initiative petition did not call for a special election in the petition; rather, the petition “failed to contain the text of the proposed measure.” Id. (emphasis added). Moreover, the California Court of Appeals took issue with the substance of the petition because relevant sections of the petition were left out. “The approximately 17 pages of general plan sections omitted from the petition were the key element of the initiative,” wrote the appellate court. Id. at 154.
By contrast, unlike in Mervyn’s, here voters that signed the Plaintiffs’ petition were “advised which laws are being challenged and which will remain the same.” Id. The petition is clear as to what “additions]” and “amend[ments]” will be made to the Long Beach Municipal Code if the law is approved by the voters of the City of Long Beach. If one peruses the Plaintiffs’ petition and the information it provides, one would be hard pressed to argue that the Plaintiffs’ petition did not allow the registered voters to “intelligently evaluate whether to sign the initiative petition and avoid confusion,” or meet “the full text requirement” based on Mervyn’s. Id. at 151. Elsewhere in Mervyn’s, the appellate court explained, “[I]t has long been our judicial policy to apply a liberal construction to [the initiative and referendum power of the voters] where it is challenged in order that the right be not improperly annulled.” Id. at 152. The majority *339 should heed the appellate court’s implied warning.
The legislative history also suggests that the governing body “will [be] foreefd]” to put an initiative on a special election, only if the initiative garners “the higher of the two thresholds” or 15% of the electorates’ vote. See California Bill Analysis, S.B. 1424 Sen., May, 03, 2000. Therefore, Plaintiffs’ initiative was not “required to be” submitted to the voters at a special election as it did not meet the “higher of the two thresholds.” Nor was it “for some reason” submitted to the voters at a special election to bar it from being on the next regular election. See Cal. Elec.Code § 9215(b). Contrary to the district court’s holding, the legislative history does not suggest an initiative is “required to be” on a special election if the supporters of an initiative “request” a special election. Therefore, the district court’s opinion mistakenly conflates the term “requirement” under § 9215(b) with Plaintiffs’ “request” to be on a special election.
Bolstering Plaintiffs’ case, California courts have explained their duty to “jealously” guard voters’ rights to directly propose legislation, and they must also accord “extraordinarily broad deference” to that right. Native Am. Sacred Site, 16 Cal.Rptr.3d at 149. Blotter, for example, made clear that any statute “dealing with the initiative power” must be “afforded” the longstanding “rule of liberal construction.” Blotter, 42 Cal.2d at 809, 270 P.2d 481.
Here, Herrera acted unreasonably, and beyond his “purely ministerial” powers, by exercising discretion to block Plaintiffs’ initiative. Friends of Bay Meadows v. City of San Mateo, 157 Cal.App.4th 1175, 68 Cal.Rptr.3d 916, 923 (2007). This is because Herrera calculated that there were 939 valid signatures, which exceeded 110% of the prorated number of signatures needed to certify an initiative for the next regular election. Cal. Elec.Code § 9115(b). Based on Blotter’s rule of “liberal construction,” the district court abused its discretion by not granting Plaintiffs injunctive relief. See Blotter, 42 Cal.2d at 809, 270 P.2d 481; see also League of Wilderness Defenders, 752 F.3d at 759; see also Totten v. Bd. of Supervisors of Cnty. of Ventura, 139 Cal.App.4th 826, 43 Cal.Rptr.3d 244, 249 (2006) (noting that “if doubts can reasonably be resolved in favor of the use of the reserve initiative power, courts will preserve it”) (internal quotation marks, brackets, and citation omitted).
Second, the district court made a “clearly erroneous assessment of the evidence” as the evidence shows Plaintiffs will suffer irreparable harm if a preliminary injunction is not granted on their behalf. See League of Wilderness Defenders, 752 F.3d at 759 (citation omitted). Like the district court,[1] the majority emphasizes this fact: “[A]s Plaintiffs’ counsel acknowledged at oral argument, they did not pay the costs of circulating the petition in the first instance and cannot claim that they have suffered any pecuniary harm.” I disagree.
Plaintiffs spent six months of their time and energy collecting 43,159 signatures. It cost the Long Beach Citizens’ and Patients’ Rights Political Action Committee $132,300 to collect the signatures. Plaintiffs did suffer pecuniary harms — they spent six months collecting signatures, and requiring Plaintiffs to repeat the gathering of the names on a new petition would cause further harm. See Rubin v. Air *340 China Ltd., No. 5:10-CV-05110, 2011 WL 2463271, *4 (N.D.Cal. June 21, 2011) (citation omitted) (“Time is money, after all....”).
In addition, Plaintiffs continue to suffer non-pecuniary harms as they cannot exercise their fundamental right to vote. Sanders Cnty. Republican Cent. Comm. v. Bullock, 698 F.3d 741, 748 (9th Cir.2012) (indicating that “a long line of precedent establish[es] that ‘[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,’ ” and elaborating that a “delay of even a day or two may be intolerable” for a party) (citations omitted). Plaintiffs’ personal stakes are also affected: Coltharp sponsored the initiative and leads the PAC that funded the efforts, and Plaintiffs signed the initiative’s petition as city residents. The majority also overlooks the harms Plaintiffs will endure if they are forced to recirculate the petition.
Third, the district court made a “clearly erroneous assessment of the evidence” as the evidence shows the balance of hardships and the consideration of the public interest weigh in favor of the Plaintiffs. See League of Wilderness Defenders, 752 F.3d at 759 (citation omitted). As noted above, Plaintiffs continue to endure significant hardships. Also, granting injunctive relief will benefit the public because it will protect citizens’ rights to propose initiatives and vote and will counter Herrera’s unlawful blocking of the initiative. See N.D. v. Haw. Dep’t of Educ., 600 F.3d 1104, 1113 (9th Cir.2010) (“[I]t is obvious that compliance with the law is in the public interest.”). Placing the initiative on the next “regular,” not “special,” election will also save the city approximately $1.5 million.
I also consider the hardships confronting Herrera and the public interests that favor Herrera’s position. At oral argument, Herrera’s counsel was asked whether Herrera would be harmed if the next regular election ballot included Plaintiffs’ initiative. The counselor’s reply was telling; no harms came to her mind at that time. The district court’s argument as to the public’s interest, which was adopted by Herrera, is premised on the mistaken belief that its interpretation of § 9215(b) is accurate.[2]
Finally, the majority suggests that the crux of this case is what Coltharp needs to show on an appeal from a denial of a motion for a preliminary injunction. The majority recognizes that the “Plaintiffs plausibly argue that the district court’s interpretation [of § 9215(b) ] was incorrect.” However, the majority reiterates the standard of review, which clarifies why it distrusts the Plaintiffs’ argument: “[W]e are here concerned only with the denial of a preliminary injunction, which we review for abuse of discretion.” Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1286 (9th Cir.2013). The majority continues: “ ‘[Wjhere a party seeks a mandatory injunction that goes beyond maintaining the status quo, “the district court should deny such relief ‘unless the facts and law clearly favor the moving party.’ ” Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir.1994). In other words, the majority grounds its decision on the belief that the Plaintiffs did not overcome the high hurdle required to warrant the issuance of a preliminary injunction.’ ” I cannot agree.
The majority refers to a “sliding scale” injunction standard, which survived the United States Supreme Court’s ruling in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, *341 172 L.Ed.2d 249 (2008). The “sliding scale” injunction standard, also referred to as the “serious questions” test, was articulated by the Ninth Circuit Court of Appeals as follows: “ ‘[Sjerious questions going to the merits’ and a hardship balance that tips sharply in the plaintiffs favor can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest.” Vanguard Outdoor, LLC v. City of Los Angeles, 648 F.3d 737, 740 (9th Cir.2011) (quoting Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049-50, 1053 (9th Cir.2010)).
Because the likelihood of harm to the Plaintiffs is obvious and great, and the requested injunction is in the public’s interest, the Plaintiffs are not required to show a likelihood of success on the merits as the majority suggests. Id. Rather, the Plaintiffs only need -to show that serious issues of law and fact have been raised. Id. The Plaintiffs have met this burden. Accordingly, they were entitled to a preliminary injunction, and the district court abused its discretion by failing to grant the injunction.
In sum, I recommend Herrera be required to certify the petition to the city council for the next regular election on November 4, 2014. After receiving “confirmation” from Herrera that Plaintiffs acquired 10% of the voters’ signatures, and above the 110% threshold of the prorated amount of signatures needed to qualify for the next regular election, the city council would be required to act in accordance with § 9215. See Cal. Elec.Code § 9115(b); see also MHC Fin. Ltd. P’ship Two v. City of Santee, 125 Cal.App.4th 1372, 23 Cal.Rptr.3d 622, 626 (2005) (holding that if a city council receives “confír-mation” from its election official that a petition was signed by more than 10% of the city’s registered voters, it must follow § 9215). If the city council does not discharge its duty, it could “be compelled to do so by mandamus.” Blotter, 42 Cal.2d at 812-813, 270 P.2d 481 (citation omitted).

. "... [N]either Plaintiff personally contributed money to this petition effort. Rather, the financial contributions have largely come from businesses seeking to sell medical marijuana in the City.”

. "In this case, the public’s substantial interest in ensuring the California Elections Code is followed outweighs the cost of recirculating the petition.”